UNITED STATES of America, Plaintiff-Appellee,

v.

Dennis Andrew NIKRASCH, Defendant-Appellant.

No. 15530.

United States Court of Appeals Seventh Circuit.

Oct. 5, 1966.

Julius Lucius Echeles and Howard W. Minn, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Robert A. Galbraith, Asst. U. S. Atty., Chicago, Ill., for appellee, John Peter Lulinski, Lawrence Jay Weiner, Asst. U. S. Attys., of counsel.

Before HASTINGS, Chief Judge, and SWYGERT and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

Defendant was charged with transporting a stolen 1957 Chevrolet convertible from Milwaukee, Wisconsin, to Skokie, Illinois, in violation of the Dyer Act (18 U.S.C. § 2312). Subsequently he filed a motion to suppress certain evidence seized without a search warrant. After the denial of the motion, defendant was found guilty on a bench trial and was sentenced to imprisonment. The only question raised on appeal is whether the District Court properly denied the motion to suppress evidence.

About 1:00 A.M. on December 12, 1964, defendant drove a 1957 Chevrolet convertible into a gas station in Skokie, Illinois. He was accompanied by Joe Carlson and Kay Smith. Defendant parked the automobile next to the gas station office instead of at the pumps. The three used the washrooms and defendant collected a roadmap and bought two bottles of Coca Cola for himself and Miss Smith.

Skokie Police Officer Frank Nierman was on patrol at this time and considered it "odd" and "funny" that a car would pull into the gas station, not near the pumps, at 1:00 A.M. Therefore he drove his squad car into the station behind de-

fendant's car. When Nierman alighted from his car, defendant was coming from the soft-drink machine with a bottle of pop in his hand. Nierman asked the defendant what he was doing in Skokie, and defendant replied that he and his companions were on their way to Milwaukee.

Thereafter Carlson emerged from the washroom and Nierman asked him what he was doing there. Carlson replied that the three were just driving around with no particular place to go.

Thereupon Nierman radioed for a second police car. Officer Zerfass arrived a few minutes later and Nierman related the conflicting stories of defendant and Carlson.

Next Nierman spoke again to Carlson, who acknowledged that he had a record in Chicago, did not want any problems in Skokie, and did not know what the three were doing there, just driving around. Carlson admitted that he had spent approximately eight years in prison for kidnaping and other felonies.

Zerfass spoke to the gas station attendant and learned that Carlson had inquired if there were any laundromats open in Skokie at that hour. Previously that evening, the City of Evanston had radioed Officers Nierman and Zerfass to watch for burglars who were robbing laundromats in the area, Skokie being two miles from the city limits of Evanston.

Zerfass asked Kay Smith, who was sitting in the Chevrolet, if he could look in the car. She acceded. In the glove compartment, he found a screw driver and a canvas money bag of the type used by banks, and on the back floor of the car, he found a hacksaw and a screw driver. Miss Smith told Zerfass that the car was her mother's. She was unable to explain why the trio was riding around Skokie at 1:00 A.M.

Because the officers were given unsatisfactory explanations by the defendant and his companions, they were arrested for disorderly conduct pursuant to Section 28–7 of the Skokie Village Code prohibiting "all persons * * * [from] wandering or driving about the streets either by night or day * * * without being able to give a satisfactory account of themselves." Nierman then drove Carlson to the police station, while the defendant, accompanied by Miss Smith, drove the Chevrolet there, followed by the other police car. At the police station, the defendant produced the registration for the Chevrolet; it was in the name of Miss Smith. Upon request, the defendant tossed Zerfass the keys to the Chevrolet. Zerfass found another money bag and a metal strongbox in the trunk of the car.

At 9:00 A.M., Detective Reiter reported for duty at the police station. From the cell-block, defendant "permitted" Reiter to examine the car. Reiter "popped off" a false serial plate from the left-hand door frame. The plate had merely been glued to the door frame. Reiter, again with defendant's "permission", then had the confidential serial number of the car checked by having the car raised on a hoist at the Mancuso Chevrolet agency. The confidential number did not correspond with the plate that Reiter had removed from the door frame. At noon on December 12th, Reiter questioned the defendant about the discrepancy in the serial numbers, and defendant confessed that he had stolen the car in Milwaukee, Wisconsin, giving a written statement to this effect about 5:00 P.M.

FBI Agent Johnson saw defendant about 9:00 P.M. in the Skokie police headquarters, and defendant also gave him a written statement that he had stolen the car in Wisconsin and had transported it to Chicago.

The defendant's pre-trial motion to suppress evidence complained of the search and seizure of the 1957 Chevrolet and the items contained therein. The District Court found that the 1957 Chevrolet was seized at the filling station pursuant to a lawful arrest of defendant and his companions, that the Village ordinance was constitutional, that the officers had probable cause for making the arrests thereunder, and that the search and seizure were incidental to the arrests.

Therefore, the motion to suppress was denied.

At the bench trial, the court found the defendant guilty and later sentenced him to three years' imprisonment.

Here the gravamen of the defendant's motion to suppress was directed at the search and seizure of the "vehicle and items contained therein." The particular items obtained from the automobile that triggered defendant's confessions were the false serial number attached to a door frame of the car and the confidential number attached to the car frame. The "popped" false serial number was received in evidence at the trial as Government exhibit 2, and testimony was received about the confidential number. We think it was improper to have received this evidence in view of the rule established in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. There it was held that evidence obtained from a warrantless search of a car, soon after suspects were booked at a police station, was inadmissible under the Fourth Amendment, being "too remote in time or place to have been made as incidental to the arrest" (376 U.S. at page 368, 84 S.Ct. at page 881).

The *Preston* rule was before this Court in Sisk v. Lane, 331 F.2d 235 (7th Cir. 1964). There the Court noted that clothing, sums of money and spotted mats, some of which were removed without a search warrant from Sisk's car immediately after the arrested defendant was taken to sheriff's headquarters, were the product of an illegal search and therefore inadmissible.[1]

Here the search of the car resulting in the discovery of the true and false serial numbers took place at the police station and at the Mancuso Chevrolet

agency at least eight hours after the defendant's arrest at the gas station. Even if the police had the right to search the car at the gas station, this does not decide the question of the reasonableness of the 9:00 A.M. search at the police station and subsequently at Mancuso's Chevrolet agency. Preston v. United States, 376 U.S. 364, 368, 84 S.Ct. 881, 11 L.Ed.2d 777. As in the *Preston* case, it is unnecessary to decide whether the arrest of defendant was valid (cf. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed. 2d 134) or whether the Skokie Village ordinance was constitutional,[2] for the warrantless search and seizure conducted the morning following the defendant's arrest was not incidental to the arrest and therefore was clearly invalid under *Preston*. At the oral argument before this Court, defendant's counsel admitted that the *Preston* case had not been called to the attention of the trial court, nor had trial objections been made to the receipt of the "popped" serial number and to the testimony about the true serial number. Nevertheless, under Rule 52(b) of the Federal Rules of Criminal Procedure, this Court may notice "plain errors or defects affecting substantial rights."

It was Detective Reiter's confrontation of the defendant with the true and false serial numbers that caused the defendant to confess. The use of both serial numbers, inadmissible under the *Preston* rule, seriously affected the fairness of the judicial proceedings below. Therefore, under the circumstances of this case, we have found it necessary to decide this constitutional issue. Cf. Silber v. United States, 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798; United States v. Atkinson, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555; United States v. Safur, 251 F.2d 30, 31 (7th Cir. 1958); United

---

1. In *Sisk*, habeas corpus was denied because the Indiana conviction was final before Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, held that the Fourth Amendment prohibition against illegal searches and seizures was applicable to State proceedings under the Fourteenth Amendment.

2. A New Jersey disorderly conduct statute directed at anyone who is apprehended by police and "cannot give a good account of himself" was recently held unconstitutionally vague. United States v. Margeson, 259 F.Supp. 256 (E.D.Pa.1966).

States v. Ward, 168 F.2d 226, 228 (3rd Cir. 1948); Simmons v. United States, 92 U.S.App.D.C. 122, 206 F.2d 427, 429 (Cir. 1953). We hold that the warrantless search disclosing the true and false serial numbers violated the Fourth Amendment and that the receipt of such evidence was improper. However, the receipt of the evidence concerning the true and false serial numbers was not the fault of the respected trial judge, for defendant's counsel failed to object to its receipt or to mention the *Preston* rule.

On this appeal the Government has not argued that defendant waived the protection accorded by the Fourth Amendment by "consenting" to the 9:00 A.M. car search at the police station and the subsequent search at the Mancuso Chevrolet agency. Since the arrested defendant was then in custody in the Skokie cell-block and had not been apprised of his Fourth Amendment rights, the trial court correctly observed that no true consent had been given to Detective Reiter. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461; Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649, 651 (1951); United States v. Blalock, 255 F.Supp. 268 (E.D.Pa., 1966). The failure of defendant's motion to suppress to single out the true and false serial numbers also does not waive the Fourth Amendment objection, where, as here, the violation of that amendment is clear from the record. Smith v. United States, 118 U.S.App.D.C. 235, 335 F.2d 270, 274 note 13 (1964); United States v. Asendio, 171 F.2d 122, 124–125 (3rd Cir. 1948).

The evidence of the true and false serial numbers, obtained from the illegal search of the Chevrolet, was the very evidence that triggered defendant's incriminating statements. Since these statements were "fruit of the poisonous tree", Wong Sun v. United States, 371 U.S. 471, 484–488, 83 S.Ct. 407, 9 L.Ed.2d 441, the objections to the statements should have been sustained.

The judgment of the District Court is reversed and the cause is remanded.