John L. WORTHY, Appellant,

v.

**UNITED STATES of America,
Appellee.**

No. 20888.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 18, 1968.

Decided Aug. 6, 1968.

Petition for Rehearing Denied May
14, 1969.

Mr. Thomas M. Raysor, Washington,
D. C., with whom Mr. John B. Olverson
Washington, D. C. (both appointed by
this court) was on the brief, for appel-
lant.

Mr. Carl S. Rauh, Asst. U. S. Atty.,
with whom Messrs. David G. Bress, U. S.
Atty., Frank Q. Nebeker and Nicholas
S. Nunzio, Asst. U. S. Attys., were on the
brief, for appellee.

Before FAHY, Senior Circuit Judge,
and BURGER and WRIGHT, Circuit Judges.

FAHY, Senior Circuit Judge:

In the early hours of October 21, 1965,
before daylight, appellant was arrested
without a warrant for vagrancy. Upon
being searched incidental to the arrest
a bottle of 53 capsules was found in one
of his coat pockets. The arresting offi-
cers suspected that the capsules con-
tained heroin, which proved to be the
case. Later that day one of the officers
swore out a complaint against appellant
for the offense of vagrancy, and the
other officer signed a complaint charging
appellant with possession of heroin not
in the original stamped package and
without the appropriate taxpaid stamps,
in violation of 26 U.S.C. § 4704(a).

Our analysis of the record indicates
that appellant, unable to post bond, was
remanded to the custody of the District

of Columbia Jail, and that after confinement there for about four months [1] the misdemeanor charge of vagrancy, for which the maximum possible imprisonment is 90 days, was nolle prossed by the Corporation Counsel for the District of Columbia. The United States contemporaneously indicted appellant for violations of Section 4704(a), *supra,* and 21 U.S.C. § 174. He was tried and convicted in the District Court of both narcotics charges.

Following the filing of an information by the United States Attorney that appellant had previously been convicted twice of violating Section 4704 and once of violating Section 174, the District Court sentenced appellant to serve the mandatory minimum sentence of ten years in prison on each of the two counts, these sentences, however, to run concurrently with each other and with sentences imposed in the two most recent prior narcotics convictions of appellant.

Appellant's basic position is that his warrantless arrest for vagrancy was without probable cause to believe that he was committing a misdemeanor in the officers' presence, and, therefore, was invalid. It follows, the contention continues, that the search which uncovered the narcotics was unlawful, so that appellant's motion to suppress this seized evidence, which was used at the trial, should have been granted, entitling him to reversal. Concluding that the arrest was supported by probable cause, we find no error in the admission of the evidence.

Two experienced police officers, Detectives Kuntz and Jenkins, participated in the arrest. Detective Kuntz testified at the hearing on the motion to suppress that he and Detective Jenkins, in the regular performance of their duties as members of the Vice Squad of the Metropolitan Police Department, had patrolled a particular neighborhood between midnight and 2:00 a. m. on the mornings of October 20 and 21, 1965. On the 20th they observed appellant loitering in front of "a house of ill fame" in the company of two known convicted prostitutes and vagrants, one of whom had also been convicted of narcotics violations. Detective Kuntz knew that appellant had a record which included larceny from the United States mail, forgery, petit larceny and violation of the narcotics laws. On October 21, at about 12:30 a. m., the officers again saw appellant in the same vicinity with one of the two prostitutes with whom they had observed him the night before—the one with the prior narcotics record—and with another prostitute and narcotics violator. At 2:00 a. m., the officers saw appellant again with the former woman. If we take in combination the testimony of the two officers on the motion to suppress and at trial there is evidence of another loitering observation some half hour or so prior to that of 2:00 a. m. on the 21st. Thus they observed appellant loitering in the company of known prostitutes and narcotics violators on four occasions during the two nights.

On the last occasion, according to Detective Kuntz's testimony, the officers approached appellant and Detective Kuntz asked him his name, date of birth, and home address. The detective then asked his occupation. He replied that he had no occupation. He was asked how he supported himself, to which he replied that he did so by "hustling" and "stealing." He then was asked his reason for being out at 2:00 a. m. and he answered that he was "just out." At this point he was arrested and advised that his arrest was for vagrancy. Detective Kuntz then, as he testified "searched him for a weapon," leading to discovery of the bottle of capsules, together with a bottle cooker, eye dropper, and needle. After this the officer informed appellant he was under arrest for violating the Harrison Act.

The testimony of Detective Kuntz about the arrest is no less credible than that of appellant. Accordingly, we can-

---

1. On the motion to suppress an officer said, we think mistakenly, this confinement was for six months.

not subscribe error to the District Court, who saw and heard the witnesses, in accepting the detective's version as to the circumstances of the arrest.

D.C.Code § 33–416a(c) provides:

Whenever any law-enforcement officer has probable cause to believe that any person is a vagrant within the meaning of this section, he is authorized to place that person under arrest and to confine him in any place in the District of Columbia designated by the Commissioners thereof.

Section 33–416a(b)(1) defines a vagrant to include "any person who is a narcotic drug user or who has been convicted of a narcotic offense" and who,

having no lawful employment or visible means of support realized from a lawful occupation or source, is found mingling with others in public or loitering in any * * * public place and fails to give a good account of himself;

or

wanders about in public places at late or unusual hours of the night, either alone or in the company of or association with a narcotic drug user or convicted narcotic law violator, and fails to give a good account of himself;

or

is included within one of the classes of persons defined in paragraphs (1) through (9), inclusive, of section 22–3302.

Section 22–3302 includes as a vagrant any person

known to be a * * * felon * * and having no lawful employment and and having no lawful means of support realized from a lawful occupation or source, and not giving a good account of himself when found loitering around in any * * * public place * * *.

and

any person who wanders about the streets at late or unusual hours of the night without any visible or lawful business and not giving a good account of himself.

As a matter of rational judgment we conclude the detectives had probable cause to believe appellant when arrested was within the above definitions of a vagrant. Whether a jury or judge would have convicted him is not the issue; it is whether at the time and place and in the circumstances above set forth, including his responses to their inquiries and their knowledge of his record and the records of the women in his company, these two experienced officers could reasonably believe—not necessarily beyond a reasonable doubt—that appellant's conduct came within the scope of the vagrancy statutes. Terry v. State of Ohio, 392 U.S. 1, 20–23, 88 S.Ct. 1868, 20 L.Ed.2d 889, and see concurring opinion of Mr. Justice Harlan in Sibron v. State of New York, 392 U.S. 40, 70, 88 S.Ct. 1889, 20 L.Ed.2d 917; Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134; Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879. The objective standards, Terry v. State of Ohio, 392 U.S. at 20–23, 88 S.Ct. 1868, 20 L.Ed.2d 889, by which to judge the reasonableness of the officers' conclusion that there was probable cause to believe appellant was in violation of the vagrancy statutes, appear from the testimony. It is interesting in this connection to note the statement in Mr. Justice Douglas' dissenting opinion in *Terry* that, "[i]f loitering were an issue and that was the offense charged, there would be 'probable cause' shown." 392 U.S. at 35–36, 88 S.Ct. at 1887. Moreover, the facts before us are unlike those which led Mr. Chief Justice Warren in his dissenting opinion in Wainwright v. City of New Orleans, 392 U.S. 598, at 607, 88 S.Ct. 2243, at 2250, 20 L.Ed.2d 1322, to condemn the technique of "using a minor and imaginary charge to hold an individual," for though relatively minor the charge here was real.

We would not be justified in concluding, as appellant contends for the first time on appeal, that the arrest was a sham. We assume that by "sham" is

meant that the arrest was not actually for vagrancy but on suspicion of a violation of the narcotics laws. There was no probing at trial of this possible motive. See Johnson v. United States, 125 U.S.App.D.C. 243, 244, 370 F.2d 489, 490. The probing went only to the issue of probable cause to arrest for vagrancy. It is possible for us now to speculate, in light of what developed, that the officers did suspect appellant of having narcotics in his possession in violation of law, but such speculation would not warrant us in invalidating the arrest, based independently as it was upon adequate probable cause. The officers did not arrest appellant on the 20th when they observed him loitering as described,[2] but only after further observation of continued conduct of the character proscribed by the vagrancy statutes. We do not view their conduct as intermeddling, given the circumstances in which they acted. The solid basis upon which they reasonably concluded that appellant was in violation of the vagrancy statutes, as the term vagrancy is defined in our Code, deters us from holding that the arrest was for some unassigned reason. This is so even were we to assume the officers hoped for greater results.[3]

The courts should be careful not to approve arrests for vagrancy upon inadequate basis. Such arrests are susceptible of abuse by being used for purposes foreign to the vagrancy statutes. In pointing this out the Report of the President's Commission on Crime in the District of Columbia, p. 570, added, "The U. S. Attorney presently requires three 'observations' before prosecution will be authorized." In any event the evidence shows no abuse in this case. In supporting this particular arrest we grant no license for abuse; but we do not feel justified in ruling this arrest invalid because in other situations an arrest for vagrancy might not be valid. While the arrest must stand or fall upon its own factual basis, the vagrancy indicia ac-

companying it pointed to the possibility of other crimes growing out of the situation. Valid arrests on probable cause to believe a particular crime is being committed often prevent the commission of other crimes.

The lawfulness of the arrest clothes with validity the subsequent search and seizure of the contraband narcotics. This leads us to agree that the use at trial of the contraband was not error. We note in passing that no statement of appellant of an incriminating nature was made by him after his arrest. No problem has been presented under Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

■ Though incident to an arrest for vagrancy the search was not for that reason required to be limited to a frisk. Absent probable cause for an arrest a suspect may be only stopped and frisked for weapons, as set forth in Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. This limitation does not apply to a search incident to a valid arrest, as is clearly recognized in *Terry*. The Court there said that a search incident to an arrest,

> although justified in part by the acknowledged necessity to protect the arresting officer from assault with a concealed weapon, Preston v. United States, 376 U.S. 364, 367 [84 S.Ct. 881, 883, 11 L.Ed.2d 777] (1964), is also justified on other grounds, *ibid.*, and can therefore involve a relatively extensive exploration of the person.

392 U.S. at 25, 88 S.Ct. at 1882. Mr. Justice Harlan in his concurring opinion refers to "a full search incident to a lawful arrest * * *." 392 U.S. at 33, 88 S.Ct. at 1886. It is true that Mr. Justice Harlan also said in *Sibron* that "If the nature of the suspected offense creates no reasonable apprehension for the officer's safety, I would not permit him to frisk unless other circum-

---

**2.** See reference to Mr. Justice Douglas' opinion in *Sibron, supra.*

**3.** The requirements of Beail v. District of Columbia, 91 U.S.App.D.C. 110, 201 F.2d 176, were fully met.

stances did so." 392 U.S. at 74, 88 S.Ct. at 1907. But he said this in connection with an investigative stop, that is, with respect to a suspected offense, not with reference to an arrest on probable cause. The relation between an officer and a suspect being stopped and frisked is different from that between an officer and a known previously convicted felon being arrested and taken into actual custody. This is not to say that a search incident to a lawful arrest does not also have limits. In Peters v. New York, 392 U.S. 40, at 67, 88 S.Ct. 1889, at 1905, 20 L. Ed.2d 917, the Court refers to the search there, which was incident to a lawful arrest, as "reasonably limited in scope" to " 'the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime.' Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964)." The Court pointed out that the officer "did not engage in an unrestrained and thorough-going examination of Peters and his personal effects"; that in patting down Peters the officer "discovered an object in his pocket which might have been used as a weapon. He seized it and discovered it to be a potential instrument of the crime of burglary." 392 U.S. at 67, 88 S.Ct. at 1905. The need to seize weapons and the potential instruments of crime, thus indicated as relevant to the scope of a search, does not limit its admissible fruit to weapons if conducted consistently with a proper search for weapons.[4] Appellant did not contend in the District Court that the scope of the search exceeded what was permissible in a search for a weapon; and there is nothing in the record to indicate excessiveness in this respect. Since the search was for a weapon the seizure of the narcotics, though not a weapon, was lawful and this contraband accordingly was usable as evidence. If in *Peters* the search had disclosed narcotics in Peters' pocket, instead of burglary tools, the narcotics could have been used as evidence had Peters been charged with violating the narcotics laws. Or if the search in *Sibron* had been reasonable, the heroin which it yielded would have been admissible.[5] Indeed, in Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782, the Court throughout the opinion places in the same category of admissible evidence seized in a search incident to a lawful arrest, "instrumentality, fruit, or contraband."[6] And see the concurring opinion of Mr. Justice Fortas, with whom the Chief Justice joined: "The seizure of contraband has been justified on the ground that the suspect has not even a bare possessory right to contraband. See, *e.g.*, Boyd v. United States, 116 U.S. 616, 623–624, 6 S.Ct. 524, 528–529, 29 L.Ed. 746 (1886); United States v. Kirschenblatt, 16 F.2d 202, 203, 51 A.L. R. 416 (C.A.2d Cir. 1926) (L. Hand, J.)." 387 U.S. at 311, 87 S.Ct. at 1652. This position apparently was approved, though the right to seize does not necessarily solve the problem of admissibility.

---

**4.** The officer testified that after placing appellant under arrest for vagrancy, "I searched him for a weapon. In his right hand pocket I found a prescription type bottle contained [sic] 53 capsules."

**5.** Mr. Justice Black dissented in *Sibron* on the ground that he thought the search was proper. He said: "Since, therefore, this was a reasonable and justified search, the use of the heroin discovered by it was admissible in evidence." 392 U.S. at 82, 88 S.Ct. at 1912.

**6.** It is true the Court also states that, we have given recognition to the interest in privacy * * * by sup-

pressing the very items which at common law could be seized with impunity: stolen goods, Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134; instrumentalities, Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142; McDonald v. United States [335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153]; and contraband, Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663; Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. 387 U.S. at 305–306, 87 S.Ct. at 1649; but in each of these cases the search was illegal.

Sibron v. State of New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917, decided the same day as *Terry* and *Peters,* is not contrary to our position. Not only was the arrest there unlawful due to lack of probable cause but the seizure was not even in connection with a valid stop and frisk, as in *Terry* "The search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by disarming a potentially dangerous man." 392 U.S. at 65, 88 S.Ct. 1904.

While the nature of an arrest for vagrancy no doubt precludes authority to search the arrestee for evidence of vagrancy, or for an instrumentality of vagrancy, this nature of the offense does not render the seized narcotics inadmissible as evidence in this case; for the search which led to their seizure had the lawful purpose of a search for a weapon, and the record does not show that it exceeded the scope permissible for that purpose.

■ Aside from the issue of probable cause appellant for the first time on appeal attacks the arrest because, as he contends, the vagrancy statutes are unconstitutional and, therefore, furnish no basis for a lawful arrest. The validity of the vagrancy statutes, however, was at no time an issue in the District Court. Objection to the use of the seized narcotics did not include this ground. While such omission does not necessarily bar our consideration of the matter, it leaves us free not to consider it. We refrain from passing upon the constitutionality of the vagrancy statutes in determining the validity of the arrest. The constitutional challenge to the statutes comes on this appeal only in connection with the admissibility of evidence for violation of the narcotic laws. A conviction under the vagrancy statutes is not in-

volved. In this situation we confine ourselves to the issues as litigated in the District Court. In On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L. Ed. 1270, it is said:

> Where, as in this case, the objection relies on collateral matter to show inadmissibility, and in addition the exclusionary rule to be relied on involves interpretation of the Constitution, the orthodox rule of evidence requiring specification of the objection is buttressed by the uniform policy requiring constitutional questions to be raised at the earliest possible stage in the litigation.

343 U.S. at 750, 72 S.Ct. at 970, footnote 3.[7] And see United States v. Booker, 363 F.2d 856 (2d Cir.); cf. Scott v. United States, 129 U.S.App.D.C. 396, 395 F.2d 619, April 29, 1968.

Other contentions have been considered. They furnish no reason for reversal, and are thought not to require discussion in the opinion.

Affirmed.

J. SKELLY WRIGHT, Circuit Judge (dissenting):

Appellant was convicted on two counts of violation of narcotics laws. The narcotics themselves, which were introduced into evidence at trial, were discovered by the police when they searched appellant after arresting him for vagrancy under 22 D.C.Code § 3302 (1967). On appeal it is argued that the vagrancy statute is unconstitutional, that therefore the arrest under it is invalid and that the exclusionary rule should apply to bar the use at trial of the fruits of a search incident to that arrest.

I

The majority maintains that the constitutionality of the vagrancy statute is not necessarily before this court because

---

7. This is aside from the question whether the vagrancy statutes unless declared unconstitutional may be relied upon by an officer in determining probable cause for an arrest. Johnson v. United States,

*supra,* 125 U.S.App.D.C. at 245, n. 2, 370 F.2d at 491, n. 2. *Compare* United States v. Margeson, E.D.Pa., 259 F.Supp. 256, 268; *cf.* United States v. Nikrasch, 367 F.2d 740, 743 (7th Cir.).

no challenge was made to it at trial. But as the Supreme Court has long held, the waiver of a federal constitutional right is not lightly to be presumed. *See, e.g.,* Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).[1] I would not presume such a waiver here and would allow the point to be raised for the first time on appeal. *See* FED.R.CRIM.P. 52(b).

This court's footnote discussion in Johnson v. United States, 125 U.S.App. D.C. 243, 245 n. 2, 370 F.2d 489, 491 n. 2 (1966), suggests that even if the vagrancy statute is unconstitutional, a search incident to an arrest under it might still be lawful so long as there was probable cause for the arrest under the statute as written. The idea apparently is that, since the police had probable cause, they therefore had a duty to arrest for violation of a statute which, at the time of the arrest, appeared to be valid, and that, because the exclusionary rule is invoked to deter police misconduct, it should not apply here where the police conduct was, given the statute, reasonable.

With respect, I think this approach is misguided. By barring the admission of evidence seized pursuant to an unreasonable search, the exclusionary rule seeks to deter such searches irrespective of which arm of the government has authorized them. As the Supreme Court said in Sibron v. State of New York, 392 U.S. 40, 61, 88 S.Ct. 1889, 1902 (1968), "The question in this Court upon review of a state-approved search or seizure 'is not whether the search [or seizure] was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment. * * *' Cooper v. [State of] California, 386 U.S. 58, 61, [87 S.Ct. 788, 17 L.Ed.2d 730] (1967)." Similarly, the question here is not whether the search was authorized by the District of Columbia Code.

It could be argued that any search incident to an arrest under an unconstitutional statute is an unreasonable one, *see* United States v. Margeson, E.D.Pa., 259 F.Supp. 256, 268 (1966); but we need not go that far. For the vagrancy statute, if unconstitutional, is so for reasons so intimately connected with the Fourth Amendment itself that the fruits of a search incident to an arrest under it should definitely be excluded. The problems with the statute are several: First, it is incredibly broad and vague, thereby giving police (and prosecutors) almost unfettered discretion to stop, question and search (and prosecute) almost anyone they choose. In addition, this vagueness does not give adequate warning to prospective delinquents who may seek to conform their behavior to the law. Second, the statute authorizes arrest (and search) for a status which, arguably, cannot constitutionally be made the subject of the criminal sanction. Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); Lacey, *Vagrancy and Other Crimes of Personal Condition,* 66 HARV.L.REV. 1203 (1953). Indeed, certain of the "conduct" proscribed by the statute may simply be so obviously harmless that to brand it criminal violates substantive due process. Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). If this is so, then it could be said that arrests and searches under the statute are themselves unreasonable and the statute could be said to be unconstitutional under the Fourth Amendment itself. Third, it is sufficiently notorious to be a fitting subject of judicial notice that arrests for vagrancy are often made simply as a pretext for a search (or interrogation) which it is hoped will turn

1. All that the Supreme Court said in its footnote 3 in On Lee v. United States, 343 U.S. 747, 750, 72 S.Ct. 967, 970, 96 L.Ed. 1270 (1952), is that it thought the Court of Appeals "would have been within its discretion" in refusing to consider a constitutional point not raised at trial. It certainly did not say the court could not consider such a point. In fact in *On Lee* itself the Court of Appeals and the Supreme Court did pass on the issue thus raised.

up evidence of a crime which the police "merely suspect" the defendant has committed, is committing or will commit and for which the police therefore cannot constitutionally arrest. *See, e.g.,* W. LaFave, Arrest 354 *et seq.* (1965); Douglas, *Vagrancy and Arrest on Suspicion,* 70 Yale L.J. 1, 9 (1960); Foote, *Vagrancy-Type Law and Its Administration,* 104 U.Pa.L.Rev. 603, 625–631, 649 (1956); Note, 59 Yale L.J. 1351 (1940); Report of President's Commission on Crime in D.C. 569 (1966) (dealing specifically with the narcotics vagrancy statute, 33 D.C.Code § 416a (1967)). Where the putative constitutional defects in the vagrancy statute are so closely related to the policies of the Fourth Amendment itself, it seems to me that if the statute is ultimately held to be unconstitutional, the exclusionary rule should be applied to the fruit of searches made incidental to arrests thereunder.[2]

II

Though I entertain serious doubts as to the constitutionality of the District of Columbia vagrancy statute, like the majority I do not think we have to reach the ultimate question of its validity. But unlike the majority, I think that issue can be avoided, not because the search was constitutional even if the underlying statute is not, but rather because I think the search was *unconstitutional* even if the statute is valid.

The idea that a warrantless search incident to a lawful arrest always satisfies the Fourth Amendment's requirement of reasonableness has become a virtual shibboleth, unthinkingly repeated by the courts. But it is a shibboleth without adequate foundation in reason, and it is time that it be reexamined. In Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964), the Supreme Court asserted that the rule permitting such searches was justified "by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime * * *." But as the recent "stop and frisk" cases indicate, a frisk, which is less of an intrusion upon the sanctity of the person than is a thorough search,[3] should be adequate to reveal weapons which might be used against the officer or to effect an escape. And since vagrancy is a crime with no conceivable attendant evidence, much less "fruits," "instrumentalities" or "contraband," the need to prevent the "disappearance or destruction of evidence of crime," Terry v. State of Ohio, 392 U.S. 1, 29, 88 S.Ct. 1868, 1884 (1968), or to "restore [the fruits of the crime] to their true

2. Moreover, assuming the statute is constitutional on its face, I think there are constitutional doubts with respect to its application to appellant here. It seems clear that until Worthy replied that he made his living "hustling, you know, stealing" there would not have been probable cause for an arrest even under the absurdly extensive vagrancy statute. It was appellant's unsatisfactory "account of himself" that provided the police with the final element of the "crime." But was Worthy free to refuse to answer and just leave when the police asked him to make such an account? If not, then was not his freedom of action impaired for purposes of the application of the strictures of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)? What could be more incriminating than a statement which itself

constitutes an element of a crime? Should not the police have given Worthy the *Miranda* warnings before asking him to account for himself? And if Worthy simply refused to give any account could this assertion of his privilege against self-incrimination have been used against him to establish an element of the crime of vagrancy and thus provide probable cause for arrest?

3. Even though a frisk for weapons is a "severe, though brief, intrusion upon cherished personal security," Terry v. State of Ohio, 392 U.S. 1, 24–25, 88 S.Ct. 1868, 1882 (1968), "which may inflict great indignity and arouse strong resentment," *id.* at 17, 88 S.Ct. 1877, it still may "realistically be characterized as something less [intrusive] than a 'full' search * * *." *Id.* at 26, 88 S.Ct. 1882.

owner," Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 311, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (concurring opinion of Mr. Justice Fortas), is illusory. Indeed even the reasonableness of a frisk for weapons can be questioned, for probable cause to believe the individual is a vagrant does not in itself provide probable cause or even "reasonable suspicion" to believe he is armed or dangerous in any way.[4]

Admittedly there is no case law directly supporting my thesis that a search incident to a lawful arrest for a crime such as vagrancy may be, and without more is, unreasonable under the Fourth Amendment. Indeed, until recently there had been very little judicial attention paid to the connection between the scope of a search of the person and its reasonableness. The approach of the courts had generally been to say that a search of the person, no matter what its scope, was either valid or invalid, and that if it was incident to a lawful arrest, for any crime whatever, it was valid. But the Supreme Court's recent pronouncements seem to me to repudiate that approach and, though not directly on point, to provide substantial support for the position I have taken. In Dyke et al. v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), the Supreme Court hinted that the search of a car incident to an arrest for a traffic offense might always be unconstitutional. *See* Note, *Search Incident to Arrest for Traffic Violation,* 1959 WIS.L.REV. 347. It did not, however, decide that question because it found that the search in *Dyke* was too remote in time or place to be incident to the arrest. But even such a hint is noteworthy for its novelty.

Much more to the point, however, are the so-called "stop and frisk" decisions, Terry v. State of Ohio, *supra,* and Sibron

v. State of New York, *supra.* In *Terry,* the Court upheld the on-the-street detention and search for weapons of three suspects who the detaining police officer had "adequate constitutional ground," but not probable cause, to suspect were going to commit a crime. In its opinion the Court repeatedly emphasized that the Fourth Amendment governs all intrusions by agents of the public upon personal security and that the scope of the particular intrusion, in light of all the exigencies of the case, is a central element in the analysis of reasonableness. It emphasized also that an intrusion reasonable at its inception may violate the Fourth Amendment by virtue of its intensity and scope and that the "scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." (Citing Warden, Maryland Penitentiary v. Hayden, *supra,* 387 U.S. at 310, 87 S.Ct. 1642, concurring opinion of Mr. Justice Fortas.) 392 U.S. at 19, 88 S.Ct. 1878. The Court felt that its inquiry was a dual one—"whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 20, 88 S.Ct. 1879.

In Sibron v. State of New York, *supra,* a related case, the Court reversed Sibron's narcotics conviction on the ground that the search which uncovered the narcotics violated the Fourth Amendment and therefore the evidence should have been excluded. The Court held that, unlike in *Terry,* there was no "constitutionally adequate reasonable ground" to conduct even a self-protective search for weapons. It went on, however, to point out that, even if there had been adequate grounds for such a search, "the nature and scope of the search conducted by Patrolman Martin were so clearly un-

---

4. Of course it may be that while there is a probable cause of vagrancy there is also some "adequate constitutional ground" short of probable cause to suspect that the accused is going to commit or has committed a dangerous crime.

In this situation the police could, if the standards laid down in *Terry* and Sibron v. State of New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), are met, make a self-protective limited search of the outer clothing for weapons.

**1114**

related to that justification as to render the heroin inadmissible. The search for weapons approved in *Terry* consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault." 392 U.S. at 65, 88 S.Ct. 1904. The Court emphasized that the search of Sibron was invalid because it was "not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by disarming a potentially dangerous man." *Ibid.*

Mr. Justice Harlan, concurring, went even further and said clearly what may have been implicit in the Court's opinion: that even if the police had reasonable grounds to suspect a narcotics offense, even a limited search for weapons might be unconstitutional because "the nature of the suspected offense creates no reasonable apprehension for the officer's safety * * *." 392 U.S. at 74, 88 S. Ct. at 1907.

It is true that the issue in both *Terry* and *Sibron* was the validity of searches incident to confrontations with suspects where the police lacked probable cause. But the Court's approach in both cases was to gauge the reasonableness of the intrusion on the basis of its intensity and on the basis of the grounds for its inception. The Court's formulation of the issues would not have been susceptible of resolution in terms of the *non sequitur* that because the arrest was lawful a thorough search incident to it was therefore reasonable under the Fourth Amendment.

As I have tried to show, a thorough search, and perhaps even a frisk,[5] incident to a vagrancy arrest is not " 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Terry, supra,* 392 U.S. at 19, 88 S.Ct. p. 1878. It is not, in the words of the Court in *Sibron,* "reasonably limited in scope to the accomplishment of the [goals] which might conceivably have justified its inception." 392 U.S. at 65, 88 S.Ct. p. 1904. It is, of course, related to a goal which could *not* have justified its inception—that of providing the police with an excuse for thoroughly searching individuals they merely suspect of crime. The vagrancy arrest has too long served as a cloak for such illegal searches.[6] If the only crime for which the police have probable cause is vagrancy, a thorough search incident to the vagrancy arrest is unreasonable under the Fourth Amendment, and evi-

5. The majority seems to assume that the search conducted here was a limited one for weapons. While it may be true, as one of the arresting officers testified, that all the police were *looking for* was weapons, there is absolutely nothing in the record to indicate that the search of the appellant was not a thorough one which intruded beyond a frisk of his outer clothing. And as *Terry* and *Sibron,* decided after the trial in this case, teach, it is the extensiveness of the search as well as the reason it is initiated that determine its Fourth Amendment reasonableness. Since the search was conducted before these decisions, there is no reason to think the police conducted only a frisk. As far as they knew, if a frisk was justified so was a thorough search. Indeed that an eye dropper and a needle were uncovered evidences the probable extensiveness of the search. Moreover, even the majority concedes that it "is possible for us now to speculate, in light of what developed, that the officers did suspect appellant of having narcotics in his possession * * *." To assume that they nevertheless limited their intrusion to a frisk for weapons is unjustified.

6. Such arrests may also provide the police with an excuse to question the accused about other crimes which they suspect he has committed. *See* United States v. Carignan, 342 U.S. 36, 46, 72 S.Ct. 97, 96 L.Ed. 48 (1951).; Culombe v. Connecticut, 367 U.S. 568, 631–632, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). *See also* the statement of Mr. Chief Justice Warren dissenting from the dismissal of the writ of certiorari as improvidently granted in Wainwright v. City of New Orleans, 392 U.S. 598, 605–606, 88 S.Ct. 2243, 20 L.Ed.2d 1322 (1968).

dence uncovered in the course of such a search should be inadmissible.[7]  Accordingly, the narcotics admitted in evidence against the appellant here should have been excluded, and his conviction should be reversed.

I respectfully dissent.

7. It may be that if, for want of bail, the vagrant is to be incarcerated, a thorough search at the jail house is reasonable under the Fourth Amendment. But the questions of the validity of such a search and of whether evidence uncovered in the course of it should be admissible are not raised by the instant case.