**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roy L. GOOSBEY, Defendant-Appellant.**

**No. 19511.**

United States Court of Appeals
Sixth Circuit.

Jan. 7, 1970.

John J. Getgey, Jr., Cincinnati, Ohio, for appellant, White, Getgey & Dennison, and Andrew B. Dennison, Cincinnati, Ohio, on brief.

Robert A. Steinberg, Asst. U. S. Atty., Cincinnati, Ohio, for appellee, Roger J. Makley, U. S. Atty., on brief.

Before PHILLIPS, Chief Judge, CELEBREZZE, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

While in custody and then suspected of mail theft, appellant Goosbey consented to a search of his locker at the place of his employment. He had, prior thereto, been given the *Miranda* and *Escobedo* warnings. The question before us is whether it was also necessary that Goosbey be told of his Fourth Amendment rights before his consent to the search was requested. Goosbey's motion to suppress incriminating evidence obtained by this search was denied. He was convicted of abstracting a package from a mail sack in violation of 18 U.S.C. § 1708. The case was tried to District Judge Timothy S. Hogan, sitting in the United States District Court for the Southern District of Ohio, Western Division.

We affirm.

Appellant Roy L. Goosbey, a postal employee, was working in a U.S. mail car at the Cincinnati Union Terminal. Another post office employee there observed Goosbey in the apparent act of removing a package from a mail sack. He had the sack between his knees, partially open, with a package protruding from it, and he had an open knife in his right hand. He quickly secreted the knife in his clothing. This activity was reported and in due season Goosbey was brought to the office of a foreman at the Terminal, awaiting the arrival of a postal inspector. The foreman's office was at the top of a flight of stairs. While waiting arrival of the postal inspector, Goosbey asked for and was given permission to go downstairs to get a cup of coffee. His locker was at the same level as, and in the vicinity of, the coffee vending machine. In the length of time that Goosbey took to obtain this coffee he could have also taken from his person and secreted in his locker the knife allegedly used in opening the mail sack. After Goosbey returned to the foreman's office, Postal Inspector Anderson arrived. He identified himself to Goosbey, asked the latter's name and address and whether he was a postal employee. Thereupon Anderson advised Goosbey of his Fifth and Sixth Amendment rights, strictly obeying the commands of *Miranda.* The one who had first seen Goosbey's activities gave an account of them, but Goosbey denied that he had a knife when seen by this observer. The postal inspector then asked Goosbey if he could search his per-

son, his locker and his car. Goosbey consented. Upon search of Goosbey's locker, a knife was found in the pocket of a blue denim jacket. Goosbey had opened the locker with his key to permit the search. Further investigation of the mail car where Goosbey's activities had been observed disclosed further and strong evidence of his quite extensive thievery from mail sacks.

In denying Goosbey's motion to suppress, the District Judge, from the evidence before him, made Findings of Fact which included the following:

"1) The Government Agent, Mr. Anderson, the Postal Inspector, promptly and fully warned the defendant to the extent explicitly or literally required by either Miranda or Escobedo.

"2) While the defendant is not knowledgeable in police matters, he did specifically understand that he would not be questioned and any further conversation between Mr. Anderson and the defendant would cease if defendant cared to exercise his Constitutional right to have a lawyer. In other words, if the defendant had requested the advice of counsel, the questioning would have ceased and there would have been no warrantless search.

"3) The defendant's consent to the search of his person, his locker and his car was given after the Miranda and Escobedo warnings had been fully and understandably given.

"4) The defendant at no time was advised of anything specifically pertaining to the Fourth Amendment; for instance, he was not informed that had he refused to consent to the search of his locker, no search would be made without a warrant. Had the defendant refused to give his consent, no search of the locker would have been made, and the defendant understood that.

"5) The defendant was under no duress or influence at the time he gave consent, except such as may be implied from the fact that he had been arrested and was in custody and had been for some minutes prior to the time the consent was given. Further, the defendant was under no duress at the time he supplied the Government agent with the key with which to open his locker.

"6) The Government has borne the burden of proving that the consent was voluntarily given with knowledge of his right to counsel and his right to remain silent."

These findings are fully supported by the facts of the case. The consent to the search of Goosbey's locker was voluntary. We are not persuaded that *Miranda* or *Escobedo* tell us that, additional to their own commands, consent to a search must be preceded by specific discussion of the Fourth Amendment. Whatever there may be to the contrary in any Circuit or District Court opinion on the subject, we are satisfied with Judge Coffin's discussion and disposition of it in Gorman v. United States, 1 Cir., 380 F.2d 158.

"We cannot accept the recently suggested rule that a specific warning of fourth amendment rights is necessary to validate a warrantless search after the suspect has been arrested. United States v. Nikrasch, 367 F.2d 740 (7th Cir. 1966); United States v. Blalock, 255 F.Supp. 268 (E.D.Pa.1966). Contra, State v. McCarty, 199 Kan. 116, 427 P.2d 616 (May 13, 1967). Although the analogy with Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), has a surface plausibility, we do not think that the Miranda prescription, formulated to give threshold warnings of fifth and sixth amendment rights at the earliest critical time in a criminal proceeding, must or ought to be mechanistically duplicated when circumstances indicate the advisability of requesting a search." 380 F.2d at 164.

Our view in this regard obviates any discussion of the government's plausible claim that had there been legal impropriety in denial of the motion to suppress, the clear proof of Goosbey's guilt would render the error harmless.

Judgment affirmed.