**Kenneth B. SCHORR, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–16213.**

Court of Criminal Appeals of Oklahoma.

June 28, 1972.

Eric J. Groves, Robert M. Jernigan, and Buck & Crabtree, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., for appellee.

SIMMS, Judge:

Appellant, Kenneth B. Schorr, was convicted of the crime of Possession of Marijuana in the District Court of Oklahoma County, Oklahoma, and sentenced to a term of six years in the pentitentiary and assessed a fine of $2,500.00, in accordance with the jury verdict. From the judgment and sentence in the case, appellant has perfected a timely appeal to this Court.

The facts, briefly stated, are that appellant was operating his Volkswagen bus in an easterly direction on N. W. 39th Street, also designated as U. S. Highway 66, within the city limits of Bethany, Oklahoma. As the Volkswagen passed to the east of the intersection of Council Road and N. W. 39th Street, the defendant negotiated a U-turn which was observed by Officer Joe Resneder of the Bethany Police Department.

Allegedly, appellant, in making the U-turn, did not have his vehicle fully in the lane marked for left hand turns.

Appellant operated his vehicle in a westerly direction back to the intersection of Council Road and N. W. 39th, where he made a right hand turn onto Council Road and headed North to a location where the vehicle was stopped by Officer Resneder. Upon ascertaining that appellant did not have a drivers license, Officer Resneder requested the appellant and the two passengers of the Volkswagen to follow the officer to the Bethany City Police Station. The appellant was permitted to drive his vehicle to the station.

After a relatively short time at the Bethany Police Station, defendant was separated from his two companions and asked to sign a "rights waiver" and a "search waiver."

Under color of authority of the "search waiver," the officers searched the Volkswagen bus and found marijuana inside the bus. This search purportedly took place after 7 P.M. on the evening of the day of the arrest.

The defendant and his two companions were thereafter transported to the Oklahoma County Jail and at that jail, the following morning, the defendant was interrogated by Captain Sharp of the Bethany Police Department and Captain Sharp obtained a written statement from the appellant.

Appellant, in his brief, asserts numerous errors on the part of the trial court as grounds to reverse and remand, or, in the alternative, dismiss the case against him. However, it is but necessary to discuss two of the propositions asserted by appellant to determine this appeal.

Proposition Three, in appellant's brief, complains that the trial court erred in admitting into evidence, over defendant's objection, certain unidentified letters containing hearsay statements of an inflammatory and prejudicial nature.

Factually, during the search of the Volskwagen bus by the officers, there was discovered in the sack containing the marijuana, certain letters, one being attached to the bottom of the sack, the other inside

the sack. One of the letters, according to the record, had been written to the defendant by his brother, and mailed from Barcelona, Spain.

The letter from Barcelona, Spain, was addressed to "Kenny Schorr, Esq.," and signed "Boyd."

The letter contained certain language which is necessary to be set out in this opinion. Within the letter there was written:

"I hope the shrink thing is going well and that you are staying out of trouble";

"Don't get stoned much";

"I really miss some good grass (all they have here is hash)";

"Been laid a couple of times";

"Save me a joint and some good records".

Not only was the questioned letter introduced into evidence, but the prosecutor alluded to the letter and part of its contents in his final summation to the jury, thus emphasizing some of the language contained in the letter which the appellant had not authored. Unquestionably, the language set out in the questioned letter was prejudicial, and had a tendency to inflame the minds of the jurors as to the defendant even though he was not directly responsible for its contents.

Appellant concedes, however, that the fact that a letter addressed to the defendant was found in the same sack with the marijuana was properly admissible as part of the res gestae and might, in its best light, from the standpoint of the state, tend to connect the defendant with the marijuana. However, appellant re-emphasizes that the contents of the letter, as set out above, were introduced by the state for the sole purpose of prejudicing the appellant in the minds of the jury.

Neither the appellant nor the state cite, in their briefs, any case directly in point on the issue of the admissibility of letters under the circumstances as above set out. Appellant contends that this particular letter was the rankest hearsay imaginable and was

written evidence in court of statements made out of court, offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out of court asserter.

A somewhat analogous fact situation may be found, however, in Goben v. State, 20 Okl.Cr. 220, 201 P. 812 (1921). In *Goben*, the state introduced into evidence a letter found in the bottom of a trunk, which letter bore the initials of the defendant. The letter was not signed, except by the name of "Jack" and was not a statement in writing made by the defendant or his co-defendant. This Court held that the defendant's objections to the introduction of the letter should have been sustained and the letter excluded.

■■■ Also, in Shaw v. State, Okl.Cr., 134 P.2d 999 (1943), this Court reiterated the general rule that "the hearsay rule applies as forcibly to statements in writing as it does to those verbally made." Ferriman v. Turner, 99 Okl. 277, 227 P. 443, 446. In *Shaw*, supra, the state introduced into evidence, over the objection of defendant, certain books, pamphlets and other writings of which defendant was not the author, for the purpose of showing the principles of the communist party, allegedly advocated by defendant, where the books and writings were not properly authenticated. As well, in *Shaw*, supra, there is no evidence that the defendant sanctioned the matter set out in said writings.

Again, this Court pointedly held that to admit such evidence, neither authored nor sanctioned by the accused, was reversible error and does not come within any exceptions to the hearsay rule.

We next turn to appellant's proposition six which is "the trial court erred in overruling defendant's motion to suppress the evidence illegally obtained by the alleged consent of the defendant." He bases this proposition of error primarily upon the fact that the "Miranda warning" given appellant by the officer before he, the appellant, signed the consent to search was substantially defective. The so-called "Miranda

warning" read to appellant and signed by appellant reads as follows:

"Before we ask you any questions, you must understand your rights, You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have the right to the advice and presence of a lawyer even if you cannot afford to hire one. WE HAVE NO WAY OF GIVING YOU A LAWYER, BUT ONE WILL BE APPOINTED FOR YOU, IF AND WHEN YOU GO TO COURT. If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you talk to a lawyer." (Emphasis added.)

■■■ By reason of Reese v. State, Okl. Cr., 462 P.2d 331 (1969), the rights warning given appellant in this case, on its face, is fatally defective. For in *Reese*, supra, this Court held in syllabus three:·

"Where police officer testified that he advised defendant that he would be appointed an attorney in the event the case came to court, and subsequently testified· to an admission or confession given by defendant during interrogation, Court of Criminal Appeals will reverse said cause for a new trial."

Following the defective "Miranda warning", appellant signed a consent to search, which reads as follows:

"I, Kenneth B. Schorr, having been informed of my constitutional right not to have a search of the premises hereinafter described without a search warrant and my right to refuse to consent to such a search, hereby authorize Joe Resneder and Clyde Standfield, Officers of the Bethany Police Department, to conduct a complete search of my premises at a 1959 Volkswagen van, ATM 506 Wash. tag. These officers are authorized by me to

take from my premises any letter, papers, materials or other property which they may desire, after receipting me for same. I further state that I am the proper person to give the consent and authorization referred to herein.

"This written permission is being given by me to the above-named officers voluntarily and without threats or promises of any kind."

(Signed) Ken Schorr"

The narrow issue to be decided in this opinion, is, "Does a defective Miranda warning render invalid a subsequent consent to search executed by an accused." This question is one of first impression in the State of Oklahoma, and research has disclosed a division of authority in other jurisdictions throughout the United States.

In a most recent case, the Court of Appeals of the State of New Mexico held in State v. Carlton, 83 N.M. 644, 495 P.2d 1091 (1972):

"Finally, defendant Pearl argues that the court should not have admitted some of her clothes into evidence 'for the reason that * * * proper *Miranda* warnings prior to obtaining the consent were not shown * * *'.

"There was evidence that a sufficient *Miranda* warning was, in fact, given to defendant Pearl prior to the obtaining of her consent to search. In answering this contention on the basis of the record, we do not hold that the Miranda warnings must of necessity be given before there can be a valid consent to search. See State v. Carlton, 82 N.M. 537, 484 P.2d 757 (Ct.App.1971). All that is required is that a consent to search 'must be freely and intelligently given, must be voluntary and not the product of duress or coercion, actual or implied, and must be proved by clear and positive evidence within the burden of proof on the state.'" (Emphasis added.)

In James v. State, Fla., 223 So.2d 52, the District Court of Appeals of Florida, Fourth District, held:

"The defendant contends that before a warrantless search can be validated by consent, the party who is subjected to the search must be given a 'Miranda type' warning advising him of his right to resist the search. In support of this proposition defendant cites United States v. Blalock, E.D.Pa.1966, 255 F.Supp. 268. That case held that a person must be informed of his right to resist a search, in the absence of other evidence showing he knew of his right to resist; otherwise, his consent is ineffectual. In our opinion, the argument of the defendant and the holding of the Blalock case apply a concept of waiver which has been developed to protect certain unqualified rights, i. e., the Fifth Amendment right to remain silent and the Sixth Amendment right to an attorney, inappropriately to the Fourth Amendment which confers only a qualified right. This concept of waiver is inappropriate because if the search is not unreasonable it is not prohibited, and no waiver is necessary. In Gorman v. United States, 1 Cir. 1967, 380 F.2d 158, the Court of Appeals for the First Circuit rejected the view proposed by the defendant that specific warnings are a condition precedent to a consent to a warrantless search."

As well, the Supreme Court of Colorado, en banc, in the case of Phillips v. People, 170 Colo. 520, 462 P.2d 594 (1969), held:

"The defendant further argues that he was not adequately advised of his rights under the Fifth Amendment prior to the giving of his consent, and that there is no proof of a knowing and intelligent waiver of those rights. In so doing, he relies upon the case of State v. Williams, 248 Or. 85, 432 P.2d 679 in which the Oregon Supreme Court found that a consent to search given by a defendant as the result of police interrogation was testimony given by that defendant against himself and as such was covered by the United States Supreme Court decision in Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. We do not agree with the reasoning

of the Oregon Court, and we conclude that Miranda v. Arizona, supra, has no application to the area of Fourth Amendment searches and seizures.

The ruling of the United States Supreme Court in Miranda v. Arizona, supra, was designed as a prophylactic rule to correct and prevent abusive police practices in the area of confessions. The Supreme Court has not acted to extend the rule in *Miranda* to the Fourth Amendment. In the absence of such an extension of the rule in *Miranda* by the Supreme Court, this court shall continue to adhere to the rule that in order for a search with consent to be reasonable the consent must be voluntary, and that the question of whether the consent was freely and intelligently given is to be determined according to the circumstances in each case."

The United States Court of Appeals, Fifth Circuit, in Perkins v. Henderson, Warden, 418 F.2d 441 (1969), in passing upon the issue of a valid consent to search, used the following language:

"The question whether there has been a consent to a search and seizure is one of fact. Landsdown v. United States, 5 Cir. 1965, 348 F.2d 405. * * * A simple admonition by the officers that the search could not and would not be conducted without Perkins' consent would have sufficed."

On the other hand, however, we find the following language in Government of the Virgin Islands v. Berne, Appellant, United States Court of Appeals, 3rd Cir., 412 F.2d 1055 (1969):

"It is appellant's contention that since his oral consent to the search and seizure was given without prior *Miranda* warnings, the communicative assent cannot be valid.

" * * *

"Thus, there is logical and rational support for the appellant's assertion that the safeguards associated with *Miranda* should also be applied to those situations where the legality of a warrantless search and seizure is justified on the basis of the accused's consent. If the validity of the search is conceived in the communicative assent of the accused, then the vice of self-incrimination is not dissipated because the search produces physical, as opposed to testimonial, evidence. Under such circumstances, the vitality of Fourth Amendment rights are critically dependent on the protective armor of the privilege against self-incrimination.

"For the *Miranda* rule to measure the validity of certain 'consent' searches, however, the conditions which pertained in *Miranda* must be met. An essential requisite for its application is that the accused be taken into 'custody or otherwise deprived of his freedom of action in any significant way.' 384 U.S. at 445, 86 S.Ct. at 1630. It is only in the context of custody, with its inherently coercive effect and its consequent deprivation of significant freedom of action, that the *Miranda* warnings are required. * * * * "

We have studied Gorman v. United States, 380 F.2d 158 (1 Cir. 1967), and as well, we have closely studied United States v. Nikrasch, 367 F.2d 740 (7 Cir. 1966). Both *Gorman*, supra, and *Nikrasch*, supra, are distinguishable from the case at bar, for in *Gorman* a proper Miranda warning was given at the outset of the interrogation before the consent to search was obtained, and in *Nikrasch*, supra, the defendant had not been apprised of his Fourth Amendment rights and the trial court correctly observed that no true consent to the search had been given.

The Supreme Court of the United States as early as 1886, in Boyd v. United States, 116 U.S. 616, 630, 633, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886), observed that the "Fourth and Fifth Amendments run almost into each other," and that "compelling a man 'in a criminal case to be a witness against himself,' which is condemned in the fifth amendment, throws light on the question as to what is an 'unreasonable search and seizure' within the meaning of the fourth

amendment." In Davis v. United States, 328 U.S. 582, 587, 66 S.Ct. 1256, 1258, 90 L.Ed. 1453 (1946), the Supreme Court noted that the law of searches and seizures "is the product of the interplay of these two Constitutional provisions."

Apparently, the United States Court of Appeals, 6th Circuit, in United States v. Goosbey, 419 F.2d 818 (1970), recognized the philosophy of the Supreme Court set out in the above paragraph. For in *Goosbey*, the question before the court was whether it was necessary that the defendant be told of his Fourth Amendment rights before his consent to a search is requested when the defendant had, in fact, previously been given both the *Miranda* and *Escobedo* warnings. Under such circumstances it was held in Goosbey, supra, that if proper adequate *Miranda* warnings are given, it is unnecessary to give the Fourth Amendment warnings prior to obtaining a consent to search.

■ This Court, therefore, is constrained to hold that if the proper *Miranda* and *Escobedo* warnings are given the defendant prior to interrogation and he thereafter, voluntarily, and without coercion, gives permission or consent to search, the same is a constitutionally valid consent.

■ We further believe a distinction must be made between custodial consent to search and consent given to search before the accused is placed under arrest. We must legally conclude that a consent to search, given during custodial interrogation must, as a matter of law, be preceded by a proper Miranda warning. Such was not done in this case.

■ On the other hand, however, a consent obtained while the person is not in custody and in a situation where neither Miranda or Escobedo are required, the person seeking the consent need only advise the person of his Fourth Amendment rights.

By reason of the foregoing, and by reason of the trial court's failure to suppress the evidence seized from the vehicle being driven by the defendant, the judgment and sentence in this case must be vacated.

The case is hereby reversed and remanded with directions to dismiss.

BUSSEY, P. J., and BRETT, J., concur.