Robert G. BURROUGHS, Appellant,

v.

UNITED STATES, Appellee.

Robert G. BURROUGHS, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

Nos. 4311, 4312.

District of Columbia Court of Appeals.

Argued Oct. 9, 1967.

Decided Dec. 12, 1967.

Charles B. Sullivan, Jr., Washington, D. C., appointed by this court, for appellant.

Lee A. Freeman, Jr., Asst. U. S. Atty., for appellee, United States. David G. Bress, U. S. Atty., Frank Q. Nebeker, Richard M. Cahill and Geoffrey M. Alprin, Asst. U. S. Attys., were on the brief.

John R. Hess, Asst. Corp. Counsel, with whom Charles T. Duncan, Corp. Counsel and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee, District of Columbia.

John C. Cratsley, Washington, D. C., filed a brief as amicus curiae, urging reversal.

Before HOOD, Chief Judge, MYERS, Associate Judge, and QUINN (Associate Judge, Retired).

QUINN, Judge.

Appellant was charged in two informations with drinking in public and possession of marihuana. He was found guilty of the former offense by the court and guilty of the latter by a jury. He appeals from the conviction of possession of marihuana.

Facts surrounding these offenses are as follows:

The arresting officer testified that he was cruising in a scout car in the vicinity of 17th Street, N. W. At approximately 2:30 a. m., he noticed a white, 1966 Valiant, parked in an alley within the proximity of a street lamp. His attention was drawn to the vehicle because an automobile of similar description was reported to have been involved in a robbery a few nights earlier. He then turned his scout car into the alley with the lights off. From a distance of approximately 30–40 feet he saw the appellant and four others drinking. As he approached the Valiant he saw that they were drinking beer. He then ordered them out of the car, told them that they were under arrest for drinking in public, and proceeded to "pat" them down. He also mentioned to them the possible involvement of the auto in a robbery. The officer then radioed for a transport to take the five to the station house. When it arrived, appellant and some of the others were again "patted-down."

Burroughs was placed separately in a van and taken to the precinct. All five were put in a line-up relating to the aforementioned robbery. They were then told that if they could post ten dollars collateral for the drinking offense, they could leave. Since appellant had no money on his person, he was held. It was at this time that a thorough search was made of his person and there was uncovered a weed-like substance, later identified as marihuana, in the jacket pocket of the appellant.

The testimony of appellant varied substantially with that of the police officer concerning what took place on the morning in question, as to the drinking, the search and the possession of marihuana.

■ The first error alleged is that the arrest was a sham, and that the testimony of the arresting officer was "manifestly incredible." The credibility of witnesses, upon which the validity of the arrest stands or falls in this case, was clearly within the province of the jury to decide as trier of fact. D.C.Code § 17–305(a) (1967); O'Bryant v. District of Columbia, D.C.App., 223 A.2d 799 (1966); Green v. United States, D.C.App., 234 A.2d 177 (1967).

Heeding the admonition of Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947), wherein the court stated, "the judge must assume the truth of the Government's evidence and give the Government the benefit of all legitimate inferences to be drawn therefrom," we think the trial judge was correct

in submitting the question of credibility to the jury.[1]

The number and types of searches made by the officers were also matters of credibility, determinable by the trier of fact. Therefore, the searches that we are concerned with are the two "pattings-down" made at the scene of the offense, and the more thorough search made at the station house, prior to placing the appellant in the lock-up.

■ Neither of the "pattings-down" can be legitimately questioned. They were undoubtedly incident to a lawful arrest and clearly sanctioned by the Fourth Amendment. In the recent case of Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), the Supreme Court reaffirmed this, stating:

> Unquestionably, when a person is lawfully arrested, the police have a right, without a search warrant, to make a contemporaneous search of the person of the accused for *weapons* or for the fruits of or implements used to commit the crime. (Emphasis added.)

Appellant contends the last and most thorough of the searches, wherein the marihuana was uncovered, was not a necessary procedure, and was violative of the appellant's right to privacy. Though the search was not made at the same time as the arrest it will be considered as incident thereto. We follow the reasoning of the Tenth Circuit, in a case involving quite similar facts, Baskerville v. United States, 227 F.2d 454, 456 (10th Cir.1955), wherein the court said:

> The fact that the search was not made until Baskerville was taken to the County Jail from the point of his arrest in Denver, which was only a comparatively

short time, did not, in our opinion, prevent the search from being an incident to a lawful arrest.

The record in this case reveals no undue delay between the arrest and the search in question at the station house.

Addressing our attention, more specifically, to the contention, with respect to the appellant's right of privacy and the necessity of the station house search, we find two cases cited by appellee most persuasive.[2] The *Charles* case concerned a man arrested initially for assault and battery. He was "frisked" once and found to be unarmed. After this "search," one of the arresting officers noticed the smell of marihuana, and without charging the defendant with possession of such, made a more thorough search of the arrested, and found the contraband on his person. The court held that the search was lawful, stating at 278 F.2d 388: "Assuredly, a second search of appellant's person for concealed weapons, *improving upon* the earlier desultory 'frisking' would not abrogate constitutional strictures." (Emphasis added.)

In addition, the court went on to say further:

> * * * it seems to us that a search of the person of the accused, even for the purpose of uncovering evidence of a crime other than that which is charged, is generally incident to a valid arrest. Power over the body of the accused is the essence of his arrest; the two cannot be separated. To say that the police may curtail the liberty of the accused but refrain from impinging upon the sanctity of his pockets except for enumerated reasons is to ignore the *custodial duties,* which devolve upon arresting authorities. Custody must *of necessity* be asserted initially over whatever the arrested party has in

---

1. See also Thompson v. United States, 88 U.S.App.D.C. 235, 236, 188 F.2d 652, 653 (1951), "It is the function of the jury, to pass on the powers of observation of a witness and his credibility."

2. Charles v. United States, 278 F.2d 386 (9th Cir.), cert. denied, 364 U.S. 831, 81 S.Ct. 46, 5 L.Ed.2d 59 (1960); Cotton v. United States, 371 F.2d 385 (9th Cir. 1967).

his possession at the time of apprehension. Once the body of the accused is validly subjected to the physical dominion of the law, inspection of his person, regardless of purpose, cannot be deemed unlawful, see People v. Chiagles, 1928, 237 N.Y. 193, 142 N.E. 583, 32 A.L.R. 676, unless they violate the dictates of reason either because of their number or their manner of perpetration. (Emphasis added.)

In the instant case, the search in question falls into the category of a search "improving on earlier desultory 'friskings.'" The "pattings-down" at the scene of the arrest were merely expedient measures to insure the immediate safety of the policemen. When the appellant was going to be incarcerated, a more thorough search was both necessary and reasonable. Such a search could uncover weapons or harmful instrumentalities secreted on the prisoner which would be undiscoverable by a cursory "patting-down."

The *Cotton* case, supra note 2, is even more analogous factually to the instant case. There the defendant was arrested for the minor offense of "disturbing private places," in violation of a city ordinance. When he was booked at the station house he was required to turn over the contents of his pockets. This produced papers evincing the fact that the defendant had stolen the car that he was driving when arrested. The court upheld the validity of this search declaring it incident to a lawful arrest, saying at 371 F.2d 393: "If a lawful search or examination produces evidence of other crimes than that for which the prisoner was arrested, that is not something to which he can object."

The extent of custodial authority exercised by police of the District of Columbia over those arrested and held, sanctioned by courts of this jurisdiction, may be found in the case of Robinson v. United States, 109 U.S.App.D.C. 22, 283 F.2d 508, cert. denied, 364 U.S. 919, 81 S.Ct. 282, 5 L.Ed.2d 259 (1960). In that case the defendants were arrested for housebreaking and burglary, and when they were taken into custody, they were required to give over their clothes to the police so that certain laboratory tests might be made to find traces of paint and other debris corresponding to like materials found at the scene of the burglary. The court found this procedure proper on the general ground that, "probable cause to believe the appellants guilty of housebreaking and larceny had already appeared, and appellants were validly under arrest therefor." 109 U.S.App.D.C. 23, 283 F.2d 509.

■ With respect to the contention that the trial judge improperly permitted the use of appellant's prior conviction of housebreaking to impeach his credibility,[3] this court is constrained to follow the dictates of Hood v. United States, 125 U.S.App.D.C. 16, 18, 365 F.2d 949, 951 (1966), where the court held that absent a "meaningful invocation of judicial discretion * * * [the appellate court will not be] disposed in such case to find [an] abuse" of discretion. The transcript of the trial reveals not only that appellant did not object to the introduction of the conviction, but that he actually desired it.

The court in the *Gordan* case,[4] in setting down guidelines for the implementation of judicial discretion in this area, reaffirms *Hood*, supra, stating:

* * * the record reveals that Appellant did not present the issue to the trial judge in the manner contemplated by *Luck*, although on the whole record we are satisfied that the trial judge did consider the point and exercise his discretion concerning the prior convictions which Appellant now argues should be excluded; as we have said before, absent plain error we will not find an abuse of dis-

---

3. Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965).

4. Gordon v. United States, 126 U.S.App. D.C. ——, 383 F.2d 936 (decided September 18, 1967).

cretion where there has been no meaningful invocation of that discretion. (383 F.2d p. 938.)

And further:

*Luck* also contemplated that it was *for the defendant* to present to the trial court sufficient reasons for withholding past convictions from the jury in the face of a statute which makes such convictions admissible. (Emphasis added.) (383 F. 2d p. 939.)

And finally it was stated:

The burden of persuasion in this regard is on the accused; and once the issue *is raised,* the District Court should make an inquiry allowing the accused an opportunity to show why judicial discretion should be exercised in favor of exclusion of the criminal record. (Emphasis added.) (383 F.2d p. 939.)

A study of the trial record reveals, clearly, that the defense counsel made no meaningful invocation of the trial court's judicial discretion, and the trial court did not, therefore, abuse its discretion.

Finding no error the conviction is

Affirmed.