**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Bernard DAVIS, Defendant-Appellant.**

**No. 25221.**

United States Court of Appeals, Ninth Circuit.

April 5, 1971.

Trask, Circuit Judge, dissented and filed opinion.

Ron Bain (argued), Los Angeles, Cal., for defendant-appellant.

Richard Jaeger, Asst. U. S. Atty. (argued), Robert L. Meyer, U. S. Atty., David R. Nissen, Chief, Crim. Div., Tom G. Kontos, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before DUNIWAY, ELY and TRASK, Circuit Judges.

DUNIWAY, Circuit Judge:

Davis appeals from his conviction for possession of counterfeit Federal Reserve notes, 18 U.S.C. § 472. We agree with Davis that his motion to suppress the counterfeit money taken from his possession should have been granted, and we reverse.

The arresting officers, who were patrolling in a marked police car, stopped the car Davis was driving after observing the following three traffic violations: (1) Davis crossed to the left of the center line and drove on the wrong side of the street, approaching the left-hand curb; (2) Davis parked briefly on the wrong side of the street; (3) leaving his parking space, Davis drove for 50 yards on the wrong side of the street before recrossing into the proper lane. Officer Saitman then, according to his testimony, "got out of the police vehicle, approached the defendant, who was driving, and asked him to alight from his vehicle, which he did. He walked over to the sidewalk, and I told him that he committed a traffic violation, that I would like to make a cursory search for weapons before I went any further. I did so. I patted him down for weapons and in the left front pants pocket I felt a large bulge. * * *" The "large bulge" turned out to be a roll of counterfeit bills.

This "cursory" search was a pat-down "starting just underneath the arm pits and going * * * all the way down to the feet." The Supreme Court has described such a "cursory" search as "a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly." Terry v. Ohio, 1968, 392 U.S. 1, 17, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889. Accordingly, the Supreme Court concluded that such a search is permissible only where the officer

"has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27, 88 S.Ct. at 1883.

At the hearing on the motion to suppress, Officer Saitman testified:

"Q. Now, sir, if you would, would you please state to the Court what facts, if any, led you to believe that the defendant was armed at the time you approached him?

"A. There were no facts leading to make me believe the defendant was armed. As a patrol officer for three years in that vicinity * * * I make it my personal point to make a cursory search of everybody I pull over and have dealings with.

"Q. But in this particular case, as you testified, there were no facts whatsoever that led you to believe that the defendant was armed, is that correct?

"A. No, there weren't."

This testimony is corroborated by officer Phillips who was driving the police car. He testified that after Davis alighted from his car:

"A. At this time my partner, Officer Saitman, began to give him, the defendant, a cursory search, which we do

with every person we come in contact with, every violator we come in contact with."

In the light of *Terry*, we cannot uphold this search.

In United States v. Robinson, D.C.Cir., 1970 (No. 23,734, Dec. 3, 1970), which the dissent cites, the court stated:

"We would note, however, that probable cause to believe that an individual has committed a traffic violation does not in itself provide probable cause or *even* 'reasonable suspicion' to believe that he is armed or dangerous in any way. *See, e. g.*, Note, [Searches of the Person Incident to Lawful Arrest], 69 Colum.L.Rev. at 874:

'* * * A protective search for weapons should be justified by an arrest alone only to the extent that the arrest creates a reasonable suspicion that the suspect is armed and dangerous. The mere arrest for a traffic violation would not appear to create such a reasonable belief.' * * * "

Slip opinion at 16, n. 13.

Reversed with directions that the indictment be dismissed.

TRASK, Circuit Judge (dissenting):

I must respectfully disagree with the majority. It appears to me that the majority reads Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), too narrowly in the light of the facts disclosed here.

In *Terry*, an experienced police officer observed two men standing on a downtown Cleveland street corner. From time to time he saw one or the other of them walk past a particular store and peer in as though they were "casing the joint" in preparation for a burglary or robbery. A third man came up and spoke briefly to them and walked away. The officer followed when they walked on down the street where they were joined by the third man who appeared to be one of them. At this point he stated that he believed it to be his duty as a police officer to investigate and added that he feared "they may have a gun." Note that at this point there had been no violation of law; the officer had received no information that these men or any of them might have a gun; he had received no information or tip that they might be planning a crime and he observed nothing about their clothing to indicate a gun. To him they were simply suspicious characters. He approached them, stopped them, patted one down and found a gun, put all of them against a wall and frisked them and found a second gun. Terry was arrested and convicted for carrying a concealed weapon.

There, as here, the complaint was made that there was an unreasonable search and seizure. The principles as always are clear. A search and a seizure may be made only pursuant to a warrant lawfully issued and based upon a showing of probable cause. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A well recognized exception is that a search incident to a lawful arrest is a legal search. Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). But even then the search must be reasonable and justified by exigent circumstancs. Warden v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

Here we deal with law enforcement in its most frequent application—in connection with motor vehicles and day to day traffic violations. With a completely mobile population it becomes increasingly difficult and more and more critical as a matter of self-preservation, for the officer to make an instant and correct judgment as to whether he will be met by a law-abiding citizen distraught at having been detected in a minor traffic infraction or by a desperate man at war with society in general and police officers in particular and a means at hand to wage it. This is not to say that constitutional principles change when situations change. It does mean that a test of reasonableness with respect to the right to frisk in connection with a minor law violation might be completely different in one community where respect for

law and law enforcement officers is a part of the social order, and in a congested megalopolis intermixed with those dedicated to a philosophy of terrorism and indiscriminate killing of police officers. The constitutional principles remain; the exigent circumstances change.

Officer Saitman in this case was also an experienced police officer riding in a patrol car as the passenger officer. The defendant and his companion had been observed in one traffic violation [1] and then parked their car in such a way as to constitute another violation. When the officers drove to the curb to observe, the defendant's vehicle pulled away from the curb and proceeded southbound in the northbound lane of traffic, thus committing a third traffic violation. The officers drove in behind the defendant's vehicle and stopped them with the red signal light.

As the majority opinion relates, the officer candidly stated on cross-examination there were no facts in his possession leading him to believe the defendant was armed.[2] He then made a significant statement:

> "As a patrol officer for three years in that vicinity * * * I make it my personal point to make a cursory search of everybody I pull over and have dealings with."

Is this really any different from the exigent circumstances in *Terry* when the officer who had followed the three suspicious characters (who had violated no statute or ordinance) put them against a wall and searched them because "I thought they might have a gun"? Had that officer been asked the same question that was here put to Saitman, "[W]hat facts, if any, led you to believe that the defendant was armed at the time you approached him?", would his answer have been substantially different? In *Terry* because they acted suspiciously the officer "thought they might have a gun." In

this case Saitman, because, "[a]s a patrol officer for three years in that vicinity * * * I make it my personal point to make a cursory search of everybody I pull over and have dealings with."

The trial court on the motion to suppress was entitled to believe that Officer Saitman was saying (1) that he was an experienced officer in that vicinity; (2) that many persons in that vicinity are armed; (3) because of the vicinity in which the event occurred he believed it reasonably necessary to his personal protection and safety to make a cursory search of everyone he pulled over and had dealings with; (4) and that this was his best judgment on this occasion. Admittedly the officer could have more clearly articulated his reasons. The trial court, however, was entirely justified in believing that the conduct of this defendant as observed by Saitman was as suspicious if not more so than was that of Terry. This defendant had violated three traffic laws in quick succession. It was reasonable to believe that after having parked illegally he saw the officers stop because he immediately started out again southbound in the northbound lane of traffic. This illegal and erratic maneuvering is not that of the ordinary motorist. I find nothing inconsistent with *Terry* in such a reading of the evidence.

The defendant made no effort to attack by cross-examination or otherwise, the circumstances related by the officer in justification of his pat-down search, other than as quoted by the majority. The trial judge had an opportunity to observe the demeanor of the witnesses and listen to their testimony. As a resident judge the vicinity may well have been known to him. His good judgment in such a proceeding is always a protective factor for the public against unreasonable and overreaching police conduct, should such be shown to exist.

---

1.  They had crossed the double yellow line going south into the northbound lane of traffic.

2.  He could probably have stated as readily that there were no facts in his possession leading him to believe the defendant was *not* armed.

Having found that the search was in all respects unreasonable, it did not become necessary for the majority to consider the validity of the scope of the search.[3]

Because I come to a different conclusion in the first instance, I would reach the question of the appropriateness of the search and the admissibility of the evidence obtained. I would affirm the district court and the verdict of the jury. Since the majority decision forecloses the utility of a discussion of the remaining issues, however, I leave them where I found them.

---

3. *See* United States v. Willie Robinson, Jr., (D.C.Cir. Dec. 3, 1970). Note, Searches of the Person Incident to Lawful Arrest, 69 Colum.L.Rev. 867, 870– 871 (1969); Note, Search and Seizure— Search Incident to Arrest for Traffic Violation, 1959 Wis.L.Rev. 347.