UNITED STATES, Appellant,

v.

Kenneth C. SIMMONS, Appellee.

No. 6511.

District of Columbia Court of Appeals.

Argued Sept. 18, 1972.

Decided March 8, 1973.

John J. Mulrooney, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., and John A. Terry and Charles D. Pierce, Asst. U. S. Attys., were on the brief, for appellant.

R. Graydon Ripley, Washington, D. C., for appellee.

Before REILLY, Chief Judge, and KELLY and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellee was charged by information with the possession of heroin in violation of D.C.Code 1967, § 33–402. A motion to suppress the heroin was granted by the Motions Judge in the trial court. This appeal has been brought by the government pursuant to D.C.Code 1972 Supp., § 23–104(a)(1). We conclude that it was error to have granted the motion, and reverse.

One witness, Officer Stephen M. Comeau of the Metropolitan Police Depart-

ment's Special Operations Division, testified in the suppression hearing. Officer Comeau learned that appellee was operating a motor vehicle in the District of Columbia following the revocation of his driver's license, which is in violation of D.C. Code 1967, § 40–302(d). Based upon such knowledge, he obtained a warrant for Simmons' arrest. Approximately five days thereafter, at 6:30 p. m. on April 22, 1972, Officer Comeau observed the car which appellee had been driving parked outside a pool hall at 2714 Martin Luther King, Jr., Avenue, S.E. Officer Comeau entered the pool hall alone. He asked Simmons to step outside; appellee complied.

The statute which prohibits operating a vehicle after revocation of a license provides a minimum fine of $100 and a minimum of 30 days in jail, with a maximum fine of $500 and a maximum imprisonment of one year (or both). When an alleged violator of that statute is apprehended, police policy calls for taking the offender into custody and to a station house for booking.[1]

Simmons was told by Officer Comeau that he was under arrest pursuant to the warrant. When an arrest is made, it is standard procedure to conduct a full field search of the arrestee. In response to the officer's direction, Simmons raised his hands and leaned against a wall. Officer Comeau began his search. He testified in part:

During the pat-down of Mr. Simmons, I felt a bulge in his left trench coat pock-

et, inside his trench coat, and I reached inside. I felt a large purse, a leather purse, and there was an envelope adjacent to it, and I squeezed the purse and felt no hard objects or anything, although at this time I did feel this envelope which, due to my previous experience with narcotic containers, I felt that this envelope contained contraband.

Officer Comeau was asked whether he felt endangered during the encounter. He replied: "I always feel in danger, especially when I walk into a pool hall, sir." When he began the pat-down in front of the pool hall, the first area touched happened to be the pocket with the bulge. He testified that when he felt the bulge, he "just wasn't sure" what it was. "At that time, it could have been anything." When he felt the envelope, he could feel that there was something in the bottom of it. The envelope was removed from Simmons' pocket. It was opened and found to contain two tinfoil packets of heroin. Four more packets of heroin were found in the purse.[2]

■ At the conclusion of the suppression hearing, the Motions Judge expressed the erroneous view that collateral could be posted on the charge of driving after revocation.[3] He concluded that since there are no fruits or instrumentalities of the offense of driving after revocation, and since Officer Comeau testified that he did not believe that there were weapons in the heroin containers, the search exceeded the bounds of reasonableness under the Fourth

---

1. *See* Metropolitan Police Department General Order No. 3, Series 1959 (April 24, 1959).

2. Although the officer testified that he readily recognized the envelope to be a probable container of narcotics, he did not testify as to the well-known common usage of leather purses for the carrying of narcotics and paraphernalia. *See, e. g.,* McWilliams v. United States, D.C.App., 298 A.2d 38, 39 (1972).

3. No reference was made below to the 5–4 opinion in United States v. Mills,

472 F.2d 1231 (D.C.Cir., 1972). In all likelihood, however, the trial court's ruling was affected by that decision. In *Mills,* an arrest was made for the offense of driving with a learner's permit while unaccompanied by a licensed driver. The standard collateral for that offense is $50. A station house search of Mills revealed a quantity of heroin. The majority concluded that the heroin should have been suppressed, because it was "convinced . . . that Mills was not given opportunity to avoid confinement by posting $50 collateral, and that he did not refuse to do so." At 1236.

Amendment. The motion to suppress accordingly was granted.

In Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), the Supreme Court considered the search of an automobile which occurred some time after its occupants had been arrested on vagrancy charges. It was stated:

> Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. (*Id.* at 367, 84 S.Ct. at 883.)

As stated more recently in Chimel v. California, 395 U.S. 752, 762–763, 89 S.Ct. 2034, 240, 23 L.Ed.2d 685 (1969):

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.

As a practical matter, the inherent reasonableness under the Fourth Amendment of searching the person of an arrestee has been so widely accepted that it has received little direct judicial attention.[4] In practice, such searches of the person incident to a custodial arrest generally have two separate but related phases. As expressed by one court, the first may be considered to be "a hasty search for obvious weapons", while the second is "a more deliberate search for weapons or evidence

just as soon as [the arrestee] is in a place where such a search can be performed with thoroughness and without public embarrassment to him." United States v. DeLeo, 422 F.2d 487, 493 (1st Cir.), cert. denied, 397 U.S. 1037, 90 S.Ct. 1355, 25 L. Ed.2d 648 (1970); *see* Burroughs v. United States, D.C.App., 236 A.2d 319, 322 (1967).

■ This court consistently has held that when there is a valid arrest, a search of the person taken into custody is proper. *E. g.,* United States v. Bynum, D.C.App., 283 A.2d 649 (1971); Best v. United States, D.C.App., 237 A.2d 825 (1968); Burroughs v. United States, *supra; cf.* United States v. Brown, D.C.App., 294 A. 2d 499 (1972).[5] Such a conclusion is eminently logical, not because the protections of the Constitution become any less meaningful after an arrest (for obviously the contrary is true), but because the definition of that which is "unreasonable" under the Fourth Amendment is altered significantly when a valid arrest has been made. As stated in Charles v. United States, 278 F.2d 386, 388–389 (9th Cir.), cert. denied, 364 U.S. 831, 81 S.Ct. 46, 5 L.Ed.2d 59 (1960):

> [I]t seems to us that a search of the person of the accused, even for the purpose of uncovering evidence of a crime other than that which is charged, is generally incident to a valid arrest. Power over the body of the accused is the essence of his arrest; the two cannot be separated. To say that the police may curtail the liberty of the accused but refrain from impinging upon the sanctity of his pockets except for enumerated reasons is to ignore the custodial duties which devolve upon arresting authorities. Custody must of necessity be asserted in-

---

4. The vast majority of cases dealing with the proper extent of a search incident to a lawful arrest relate to searches of the place of the arrest, such as a home, place of business, or an automobile.

5. This court's recent opinion in United States v. Page, D.C.App., 298 A.2d 233 (1972), is not to the contrary. That case dealt with the frisking of a passenger in an automobile which had been stopped for speeding; it was held that the facts did not justify such a search.

itially over whatever the arrested party has in his possession at the time of apprehension. Once the body of the accused is validly subjected to the physical dominion of the law, inspections of his person, regardless of purpose, cannot be deemed unlawful, see People v. Chiagles, 1928, 237 N.Y. 193, 142 N.E. 583, 32 A. L.R. 676, unless they violate the dictates of reason either because of their number or their manner of perpetration.

We are aware of but one decision which would support the action of the trial court in granting the motion to suppress. That is the 5–4 opinion of the United States Court of Appeals for the District of Columbia Circuit in United States v. Robinson, 471 F.2d 1082 (1972), petition for cert. filed, 41 U.S.L.W. 3378 (U.S. Dec. 27, 1972) (No. 72–936). The majority there concluded, under circumstances notably similar to those presented here, that a quantity of heroin which had been seized as a consequence of a proper arrest for driving after revocation should be suppressed as evidence. Essentially, the majority held that where an arrest is predicated upon an offense bearing a "traffic" label, the Fourth Amendment precludes anything beyond a *Terry*-type frisk of the arrestee's outer clothing for weapons. *See* Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The *Robinson* opinion is lengthy, and much of it constitutes dictum going considerably beyond the factual situation which was before the court. In *Robinson*, a full field search of the arrestee produced a crumpled cigarette package which, upon being inspected, was found to contain heroin. While *Robinson* holds the seizure of that heroin to have been unconstitutional, the majority opinion does provide a possible avenue for approval of the search in this case within the framework of *Robinson*. In footnote 9, which begins on page 7 of the *Robinson* slip opinion [471 F.2d 1089] the majority takes the position that rather than inspecting the cigarette package, the officer should simply have placed it "beyond the suspect's reach until the encounter has ended." This court specifically has rejected such a position, holding (in a case sustaining the constitutionality of a search of a woman's purse and wallet) that a tactical judgment made by a police officer is not rendered unreasonable simply because an alternative course of action also would have been reasonable. Bailey v. United States, D.C.App., 279 A.2d 508 (1971). Without digressing to discuss the relative wisdom of a "see no evil" approach to modern law enforcement, we quote from that same footnote in *Robinson*:

> The only exception to this rule [of placing a container beyond an arrestee's reach] arises where the officer, upon discovering the "container," has probable cause to believe it contains illegal contraband. At that point, the officer may place the individual under arrest for the possession offense and then examine the contents of the "container" in the exercise of his authority to conduct a full search of the person incident to that arrest.

In this case, an experienced officer readily recognized the small manila envelope in Simmons' pocket as a customary container of narcotics.[6] Appellee already was under arrest at that moment, and we cannot acquiesce in the notion that a second arrest somehow would have given propriety to a full search which would have been unreasonable incident to the first arrest. Any concept of sequential arrests for separate offenses is artificial at best; we do not perceive the reasonableness standard of the Fourth Amendment as necessitating resort to legal fictions.[7]

---

6. He testified in part: "[T]hrough past experience with seizing narcotics, [in] the major portion of these cases the narcotics were contained in small envelopes, manila envelopes . . . ." Further, he stated that he had never seen such an envelope used "on the street" for any purpose other than as a container of narcotics.

7. *See* Adams v. United States, 130 U.S. App.D.C. 203, 399 F.2d 574 (1968), cert. denied sub nom. Roots v. United States,

■ We thus are unwilling to decide this case in a manner which superficially would be consistent with *Robinson*. In considering whether we should follow *Robinson* on a general basis, we have accorded great respect to the majority's views. Nonetheless, we cannot accept the holding of *Robinson* as valid authority for the District of Columbia court system. We reach this conclusion with regret, for our holding in this case means that law enforcement authorities and trial judges in this city will be faced with operating under different evidentiary standards, depending essentially upon whether a search incident to a custodial arrest arising from a traffic offense reveals evidence of a District of Columbia Code or a United States Code violation. *See* In re T.W., D.C.App., 295 A.2d 69, 71 (1972). Our responsibility, however, is clear. Congress has decreed that since February 1, 1971, this court is the highest court in the District of Columbia. D.C. Code 1972 Supp., § 11–102. In disposing of this case, we are obliged to exercise our best independent judgment, and the fact that a constitutional issue is presented does not compel us to give greater weight to the circuit court's opinion. M. A. P. v. Ryan, D.C.App., 285 A.2d 310 (1971).

The majority, concurring, and minority opinions in *Robinson* are extensive, and lengthy discussion thereof is unnecessary. However, since our decision does create a conflict in the law in this jurisdiction, the nature of our disagreement with the majority should be described briefly.

The *Robinson* majority described the issue before it as follows (471 F.2d at 1090):

Thus the question is now squarely presented whether, and under what circumstances, an arresting officer may conduct a *full* search of the person incident to a lawful arrest for violation of a mere motor vehicle regulation.

Our divergence from the majority's thinking begins at that point. Initially, we reject—both technically and philosophically —the idea that *Robinson* and this case involve a "mere motor vehicle regulation." Technically, the offense here and in *Robinson*—driving after revocation—is statutory. Congress created the offense, and prescribed a minimum of 30 days and a maximum of one year's imprisonment (in addition to fines ranging from a minimum of $100 to a maximum of $500) for a violation thereof. Philosophically, we cannot subscribe to the use of the term "mere" to imply a relative sanctioning of any form of unlawful conduct.[8] For the courts to superimpose a rating spectrum upon criminal code provisions would be to invite reduced public confidence in the logic and consistency of the judicial process. In our view, the legal consequences which flow from the fact of a valid arrest should not be subject to court-imposed gradations depending upon the precise nature of the conduct which led to the arrest.

Consideration should be given to Worthy v. United States, 133 U.S.App.D.C. 188, 409 F.2d 1105 (1968), a decision which does constitute binding authority in this jurisdiction since it was decided prior to the 1971 court reorganization. *See* M. A. P. v. Ryan, *supra*, 285 A.2d at 312. In *Worthy,* an arrest was made pursuant to the District of Columbia's since-invalidated va-

393 U.S. 1067, 89 S.Ct. 722, 21 L.Ed.2d 710 (1969). In a concurring opinion, then-Circuit Judge Burger challenged the concept of what he referred to as a "divisible arrest." He concluded:

The reason for requiring probable cause for an arrest is to protect against arbitrary interference with liberty. When the condition of custody already exists, however, the constitutional requirement of an arrest on probable cause would be totally superfluous—a sheer

ritual serving no legitimate protective function. *Id.* at 210, 399 F.2d at 581.

8. In his concurring opinion in *Robinson*, the Circuit Court's Chief Judge observed that "this is not a typical traffic offense arrest." 471 F.2d at 1109. In the "typical" traffic stop, no warrant is involved, the offense is committed in the officer's presence, and the matter is handled by the issuance of a citation.

grancy statute. A search conducted pursuant to that arrest yielded narcotics. The use of the narcotics in evidence was upheld, the court noting: "The lawfulness of the arrest clothes with validity the subsequent search and seizure of the contraband narcotics." 133 U.S.App.D.C. at 191, 409 F.2d at 1108.

The author of the majority opinion in *Robinson* dissented in *Worthy*. The rationale of the *Worthy* dissent is essentially the same as that reflected in the *Robinson* majority opinion: Since vagrancy was a crime without fruits or instrumentalities, a search conducted pursuant to an arrest for that crime could not exceed the frisking standards which are acceptable under Terry v. Ohio, *supra*.[9] This brings us to the major area of our disagreement with the *Robinson* majority: its preoccupation with the "stop and frisk" concepts enunciated in *Terry.*

Nothing could be clearer than the fact that *Terry* dealt with cicumstances which fell short of establishing probable cause for arrest. The Supreme Court's language in describing the positions taken by Terry's counsel is of considerable significance. The Court stated (392 U.S. at 25, 88 S.Ct. at 1882):

> [H]e says it is unreasonable for the policeman to take that step [of searching for weapons] until such time as the situation evolves to a point where there is probable cause to make an arrest. When that point has been reached, petitioner *would concede the officer's right to conduct a search of the suspect for weap-*

ons, fruits or instrumentalities of the crime, or "mere" evidence, incident to the arrest. (Emphasis added.)

The Court in *Terry* went on to recognize the

> . . . distinction in purpose, character, and extent between a search incident to an arrest and a limited search for weapons. The former, although justified in part by the acknowledged necessity to protect the arresting officer from assault with a concealed weapon, Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964), is also justified on other grounds, ibid., and can therefore involve a relatively extensive exploration of the person. *Id.*

We thus perceive no justification for applying *Terry* standards to a situation involving a valid arrest.[10] Further, analytically there is no basis for limiting the *Robinson* majority's thinking to a custodial arrest for a "traffic" offense. As foreshadowed by the dissent in *Worthy*, the rationale of *Robinson* readily may be expanded to apply to numerous crimes which technically may be free of fruits or instrumentalities. To make the nature of the offense the key to whether a full search may be undertaken as part of a valid arrest inevitably would be to create still another judicial morass, and would greatly complicate the day-to-day performance of the police officer's vital duties.[11] Perhaps even more importantly, it would unduly endanger the safety of the officer without conferring any benefit on the public at large.[12]

9. The dissenting opinion in *Worthy* included the following statement: "Admittedly there is no case law directly supporting my thesis that a search incident to a lawful arrest for a crime such as vagrancy may be, and without more is, unreasonable under the Fourth Amendment." 133 U.S.App.D.C. at 196, 409 F.2d at 1113.

10. The Court also stated in *Terry* (392 U.S. at 26, 88 S.Ct. at 1882):
An arrest is a wholly different kind of intrusion upon individual freedom

from a limited search for weapons, and the interests each is designed to serve are likewise quite different.

11. As one observer has aptly noted:
[T]he law of searches is so incredibly complex that it defies sloganeering, and all but precludes informed public debate. F. Graham, The Self-Inflicted Wound 197 (1970).

12. One fact which is present in this case illustrates the peril which would be created by *Robinson.* When Simmons was

■ We are not dealing here with a traffic arrest which might be said to be a mere pretext for an otherwise unreasonable search for narcotics or other contraband, or with a routine traffic stop which culminates in the issuance of a citation. Nor are we considering the type of articulable suspicions which can justify proper protective measures by the police in even the most. routine traffic stop. This case involved an unquestionably lawful custodial arrest. In such circumstances, we conclude that it is not unreasonable under the Fourth Amendment to initiate a careful search of the arrestee, irrespective of the specific nature of the offense which gave rise to the arrest. The scope of the search of Simmons' clothing which occurred at the time of his arrest was within the bounds of reasonableness.[13] The heroin, having been seized pursuant to a constitutionally permissible search, may be used as evidence.

Reversed and remanded.

KELLY. Associate Judge (dissenting):

I cannot agree that the search and seizure in this case did not exceed reasonable bounds under the Fourth Amendment.

Officer Comeau testified at the hearing on the motion to suppress that he arrested appellee pursuant to a warrant charging him with operating a motor vehicle after revocation of his operator's permit. Before transporting him to the station, Offi-cer Comeau instructed appellee to place his hands against a wall, and began to pat him down.[1] Upon feeling a bulge in the pocket of appellee's trench coat, the officer reached into the pocket and discovered that it contained a leather pouch and an envelope. He squeezed both items, ascertaining to his own satisfaction that they contained no weapons. Admittedly no longer searching for concealed weapons, he nonetheless withdraw the envelope from appellee's pocket since, in light of his prior experience, he suspected that it might contain narcotics. Investigation confirmed his suspicions and appellee was charged with unlawful possession of heroin.

The majority, in reversing the granting of the motion to suppress the heroin, has taken the position that it is constitutionally permissible to fully search the person of an arrestee, incident to a lawful custodial arrest, regardless of the nature of the offense with which he is charged. In my opinion, this holding is contrary to law.

In analyzing the constitutionality of a warrantless search of persons or places there are two questions which must be considered. The first is whether the search was justified at its inception, and the second is whether it was reasonably related in scope to the circumstances which justified the interference in the first place.[2]

Unquestionably, when an officer lawfully takes a person into custody there is some right to search incident to the arrest.

arrested pursuant to the warrant charging him with driving after revocation, a bench warrant was outstanding for his arrest on another charge. The existence of that warrant was unknown to Officer Comeau when he made the arrest, but clearly it could have had a significant effect on Simmons' response to being arrested. The majority opinion in *Robinson* unjustifiably assumes a rational and peaceful response by anyone who is taken into custody pursuant to an arrest having its genesis in a traffic offense.

13. For one court's views as to the extent to which such a search is permissible, see United States v. Simpson, 453 F.2d

1028 (10th Cir.), cert. denied, 408 U.S. 925, 92 S.Ct. 2504, 33 L.Ed.2d 337 (1972). Like our appellee, Simpson was arrested pursuant to a warrant. A search of his wallet incident to that arrest revealed evidence of an unrelated crime ; the use of such evidence was sustained.

1. An Officer Jenks came upon the scene and assisted in the arrest.

2. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ; United States v. Robinson, U.S.App.D.C., 471 F.2d 1082 (No. 23,734, Oct. 31, 1972), petition for cert. filed, 41 U.S.L.W. 3378 (U.S.Dec. 27, 1972) (No. 72–936).

The legitimate objectives of such searches have traditionally been stated as the need to seize fruits, instrumentalities and evidence which might be destroyed or concealed, and the necessity of removing any weapons that the arrestee might use against the officer or for the purpose of effecting an escape.[3] Thus, the situation is markedly different from a *Terry*-type stop and frisk for weapons, which cannot be justified at its inception unless an officer who lacked probable cause to arrest can demonstrate that he had reasonable, articulable suspicions that he was dealing with an armed and dangerous man.

However, it is also clear that a search incident to a lawful arrest must be reasonable in scope to remain within constitutional bounds; that is, it "must have a reasonable relationship to the protection of the officer or the crime for which the accused was arrested." [4]

This scope limitation principle has been clearly set out by the Supreme Court. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Court stated that "[t]his Court has held in the past that a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope", and that "[t]he scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Id.* at 17–19, 88 S.Ct. at 1878.

In Peters v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), a companion case to *Terry* involving a search incident to a lawful arrest, the Court made it apparent that the scope limitation principle applies to all searches, and is not limited to stop and frisk situation when it said:

[The officer] had the authority to search Peters, and the incident search was obviously justified "by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime." . . . *Moreover, it was reasonably limited in scope by these purposes. Officer Lasky did not engage in an unrestrained and thorough-going examination of Peters and his personal effects.* . . . 392 U.S. at 67, 88 S.Ct. at 1905. [Emphasis supplied.]

In Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court again applied the scope limitation principle to an arrest-based search and concluded that a far ranging search of the house of a man arrested for larceny was not " 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." 395 U.S. at 762,[5] 89 S. Ct. at 2039.

This court has also recognized that the right to search must be reasonably limited in scope, and specifically "that there are limitations on the right to search incident to a traffic arrest".[6] In Dickerson v. United States, D.C.App., 296 A.2d 708 (1972), following an arrest for driving with outdated license tags, an officer searched under the seat of the car after the arrestee had been removed and discovered a gun. The search was held to be illegal because it

was not for fruits of the offense because there were none. It was not for evidence of the offense because the officers already had the altered tags and registration. It was not a protective search for weapons because appellant had already been removed from his car and placed in the police car. No action by appellant had indicated an attempt to conceal contraband in the car, and the

---

3. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

4. United States v. Humphrey, 409 F.2d 1055, 1058 (10th Cir. 1969).

5. For a lengthy discussion of this point see United States v. Robinson, *supra* note 2.

6. Dickerson v. United States, D.C.App., 296 A.2d 708, 709 (1972).

officers had no reason to believe that the car contained weapons or other contraband. . . . *Id.* at 709.

Again in Watts v. United States, D.C. App., 297 A.2d 790, 792 (1972), we stated:

There is no right to make a general exploratory search incident to a traffic arrest. McGee v. United States, D.C. App., 270 A.2d 348, 349 (1970). When the search is made without a warrant, it must be with probable cause or bear some reasonable relationship to the crime for which the arrest is made or to the safety of the officer if it is to come within one of the exceptions to the warrant requirement described in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); United States v. Humphrey, 409 F.2d 1055 (10th Cir. 1969).[7]

Although the facts of the instant case can be distinguished from the aforementioned cases in that we are here concerned with a search of a person, rather than a place, taken into custody for one of the more serious types of traffic offenses, our reasoning should remain the same.[8] Where an arrest is made for an offense for which there are no fruits, instrumentalities, or evidence to be found it is my opinion that the only proper goal of an incident contemporaneous search is the removal of weapons and means of escape. Once this goal is accomplished, any further intrusion is exploratory and unreasonable. In the instant case, the arresting officer had completed his search for weapons in appellee's pocket when he withdrew the envelope of narcotics. Absent probable cause to believe this envelope contained contraband, the officer had no right to examine it.

The cases relied on by the majority admittedly contain much general language supporting the right of an officer to make a full search of persons incident to lawful arrests. It must be pointed out, however, that none of those cases involve traffic offenses and only one addresses itself specifically to the problem of searching an arrestee charged with an offense for which there are no fruits, instrumentalities, or evidence.[9] That case is Worthy v. United States, 133 U.S.App.D.C. 188, 409 F.2d 1105 (1968), where the validity of a search of a person arrested for vagrancy which uncovered narcotics was upheld. The majority regards this case as binding precedent under the principles enunciated in M. A. P. v. Ryan, D.C.App., 285 A.2d 310 (1971), despite the fact that the court which decided it has stated its opinion that subsequent Supreme Court decisions have

---

7. On the related question of station house searches *see* United States v. Mills, 472 F.2d 1231 (D.C.Cir., decided en banc May 10, 1972), where the court held that the right to search incident to arrest "does not mean that [the person arrested] is subject to any and all searches that the arresting officer may wish to conduct." At 1234. Mills had been arrested for a minor traffic offense and, without being advised of his right to post collateral, he was forced to empty his pockets at the station house for a prelockup inventory. Contraband thus disclosed was held to be inadmissible in evidence against him since, had he been told he could post collateral, he would have been able to do so thus avoiding the need for an inventory search. *Accord,* Carpio v. Superior Court, County of Santa Barbara, 19 Cal.App.3d 790, 97 Cal.Rptr. 186 (1971); People v.

Overlee, 174 Colo. 202, 483 P.2d 222 (En Banc, 1971).

8. Obviously, driving after revocation is not a "mere" traffic offense. It is a serious offense for which one may be fined or imprisoned or both. However, this does not change the fact that it is a crime lacking fruits and instrumentalities.

9. Although this court has long relied on the general language of Charles v. United States, 278 F.2d 386 (9th Cir.), cert. denied, 364 U.S. 831, 81 S.Ct. 46, 5 L.Ed.2d 59 (1960), to support its decisions, it is interesting to note that the Ninth Circuit, absent special circumstances, disapproves of a protective search in routine traffic arrests. United States v. Davis, 9 Cir., 441 F.2d 28 (1971).

"[cast] grave doubts on the continuing validity of that holding." [10]

Additionally, I am disturbed by the suggestion of the majority that the discovery of a small manila envelope in appellee's pocket was sufficient to give Officer Comeau probable cause to believe appellee was in possession of narcotics. Although the officer testified that he had seen such envelopes used for carrying narcotics on other occasions, and that he had never seen such an envelope used on the street for any other purpose, he also admitted that it was a standard payroll envelope, the kind, in fact, which he himself received every payday. The suggestion that when an officer sees a person in possession of an ordinary payroll envelope he has probable cause, absent additional circumstances, to search that envelope for narcotics is, in my opinion, unsupported by the case law of this jurisdiction.[11]

---

10. United States v. Robinson, *supra* note 2, 471 F.2d at 1108 n. 47.

11. *Cf.* McWilliams v. United States, D.C. App., 298 A.2d 38 (1972).