32 N.Y.2d 451 (1973)
The People of the State of New York, Respondent,
v.
Melvin Adams, Appellant.
Court of Appeals of the State of New York.
Argued March 23, 1973.
Decided June 7, 1973.
Allen E. Burns, William E. Hellerstein and Robert Kasanof for appellant.
Eugene Gold, District Attorney (Harry Brodbar of counsel), for respondent.
Chief Judge FULD and Judges BURKE, JONES and WACHTLER concur with Judge GABRIELLI; Judge JASEN dissents and votes to affirm in a separate opinion in which Judge BREITEL concurs.
*453 GABRIELLI, J.
In the late evening of November 4, 1970, defendant was stopped by a policeman for driving his car with high beam headlights. In making a routine inquiry, the patrolman requested defendant to produce his operator's license and registration. The vehicle identification number on the registration coincided with the identification number on the vehicle but a further check with the National Auto Check Book revealed that the number did not call for the vehicle in question, whereupon the officer arrested defendant "on the charge of altered identification number" and, without further inquiry, immediately conducted a search of the defendant's person. The nature and extent of the search is best described by the officer's testimony:
"Q. When you placed the defendant under arrest, tell us how you searched him? * * *
"Q. Officer, did you frisk him?
"A. I placed the defendant's two hands on the roof of the radio car and I went through his person.
"Q. So it's more than just a frisk. You actually went into his pockets?
"A. I searched him, yes."
This search disclosed marijuana in his coat pocket; and a search of the car, conducted immediately thereafter, disclosed additional marijuana, a scale and a quantity of manila envelopes. The defendant was thereafter arraigned on charges of possession of the marijuana and possession of a motor vehicle with an altered identification number.
We are called upon to consider the validity of a warrantless search of the defendant's person, followed by a search of his vehicle, incident to his arrest for a violation of section 422 of the Vehicle and Traffic Law which, in pertinent part provides *454 that "any person having possession for more than thirty days of a motor vehicle * * * the identification number of which has been destroyed, removed, [or] defaced * * * without having made application to the commissioner for permission to make or stamp on a new number * * * shall be guilty of a misdemeanor, and punishable by a fine of not less than twenty-five dollars nor more than fifty dollars."
The touchstone of the Fourth Amendment guarantee against illegal searches is reasonableness (Terry v. Ohio, 392 U. S. 1, 19-20; United States v. Rabinowitz, 339 U. S. 56, 63; United States v. Robinson, 471 F.2d 1082, 1091, 1097) and, in assessing the test of reasonableness, our courts, as well as those of our sister States "`have refused to establish a uniform rule to govern all searches accompanying valid arrests, but rather have examined the nature of the offense and the surrounding circumstances to determine whether the search was warranted' (People v. Watkins, 19 Ill.2d [11], supra at p. 18)" (People v. Marsh, 20 N Y 2d 98, 103).
Initially, it should be carefully noted that it is not, and indeed could not be, contended that the search of the defendant was a mere frisk, or that the officer was in jeopardy, or that the contraband seized was in plain view, or, in fact, that there were any suspicious movements (cf. Terry v. Ohio, 392 U. S. 1, supra; Sibron v. New York, 392 U. S. 40; Harris v. United States, 390 U. S. 234; Ker v. California, 374 U. S. 23; United States v. Drew, 451 F.2d 230; United States v. Thomas, 289 F.Supp. 364). The prosecution based its sole authority and claim to conduct the search on the initial traffic arrest and, in fact, stipulated at the suppression hearing that "the basis of any search or seizure in this case was the fact that the defendant was placed under arrest for the 422 violation" and, more importantly, it was further conceded that "the officer, for the purposes of this motion, did not have probable cause independent of that violation".
A search may not of course be exploratory in nature but must be specific in its initiation and its scope (see Coolidge v. New Hampshire, 403 U. S. 443; United States v. Rabinowitz, 339 U. S. 56, 62-63, supra); and the lawfulness of an arrest will not always justify an otherwise illegal search and, in fact, "General or exploratory searches are condemned even when they are incident to a lawful arrest. United States v. Rabinowitz, 339 U. S. at 62" *455 (Amador-Gonzalez v. United States, 391 F.2d 308, 313; Carlo v. United States, 286 F.2d 841, 846).
As noted, the defendant's person was first subjected to a search which was the predicate for and led to the subsequent search of the car. It is generally accepted that, based on reasonable grounds, the legitimate objective of a warrantless search incident to arrest are to permit the "(1) seizure of fruits, instrumentalities and other evidence of the crime for which the arrest is made in order to prevent its destruction or concealment; and (2) removal of any weapons that the arrestee might seek to use to resist arrest or affect his escape" (United States v. Robinson, 471 F.2d 1082, 1093, supra; see, also, Preston v. United States, 376 U. S. 364, 367; People v. Lewis, 26 N Y 2d 547, 552).[*] None of these grounds is here present.
Having produced his license and registration and in the absence of any showing that the defendant was unable to explain satisfactorily or answer any questions concerning the identification number, it is unlikely and certainly unreasonable to assume that, in the circumstances of this case, a search of the defendant's person was properly an incident to the arrest. Lacking is any foundation for a justifiable belief that a search would satisfy the constitutionally protected requirements therefor.
We hold in this case that a violation of section 422 of the Vehicle and Traffic Law, without more, will not sustain this search. In reaching this conclusion we have carefully weighed the need to search along with the governmental interest to justify the search, against the intrusion upon the constitutionally protected interests of private citizens.
The order of Appellate Term should be reversed and the order of the Criminal Court of the City of New York should be reinstated.
*456 JASEN, J. (dissenting).
I would sustain the search and seizure in the instant case as incident to a lawful arrest and, accordingly, affirm the order of the Appellate Term.
Involved is an unquestionably lawful custodial arrest for operation of a motor vehicle with an illegally changed serial number. The offense, albeit arising under the Vehicle and Traffic Law (§ 422), is not a mere traffic infraction, but a misdemeanor. The incidental search in this case is, thus, readily distinguishable from that in People v. Marsh (20 N Y 2d 98), where this court condemned a search incident to an arrest for failure to answer a speeding summons  an infraction. In Marsh, the court noted that "the Legislature never intended to authorize a search of a traffic offender unless, when the vehicle is stopped, there are reasonable grounds for suspecting that the officer is in danger or there is probable cause for believing that the offender is guilty of a crime rather than merely a simple traffic infraction." (People v. Marsh, at p. 101 [emphasis added].) Hence, even under Marsh there was a right to search the defendant because there was "probable cause for believing that the offender [the defendant] * * * [was] guilty of a crime rather than merely a simple traffic infraction."
In contrast to Marsh, the crime in this case was not minor. It came to light in a traffic situation, but was not a traffic matter. Granted, in the usual traffic offense there are no fruits or instrumentalities justifying an evidentiary search. But this was not a truly routine traffic offense  such as running a stop sign or exceeding the speed limit  which any at sometime may commit. Involved is an illegally changed serial number, primary and strong evidence that the vehicle had been stolen. There was at least a reasonable probability that a search of the vehicle would produce evidence of prior ownership or that it was stolen.[1]
Under the circumstances, a custodial arrest was called for. Indeed, the officer would have been remiss if he had failed to take the defendant into custody. The hour was late, the offense involved serious enough in its own right and indicative of an even more serious offense. For his own safety, the officer was justified in making a protective search for weapons before taking *457 the defendant into custody. In this regard we cannot be unmindful of the large number of police injuries which have accompanied ostensibly routine automobile stops.[2]
In sum, whatever reasons there may be for a rule that bars searches incident to minor traffic arrests (see United States v. Robinson, 471 F.2d 1082, 1112, 1116 [WILKEY, J., dissenting] [D. C. Cir.], cert. granted 410 U. S. 982), I find them inapplicable in the context of this case. (See United States v. Simmons, 302 A. 2d 728 [D. C. C. A.].) Although we should not condone a search of an arrestee irrespective of the offense which gives rise to the arrest, this search was reasonable in its inception and unreasonable in its scope. The deterrent purposes of the exclusionary rule are not well served by condemning it as constitutionally unreasonable. The contraband seized should be admissible into evidence against the defendant.
Accordingly, I would affirm the order of the Appellate Term.
Order reversed, etc.
NOTES
[*] In Coolidge v. New Hampshire (403 U. S. 443, 454-455) the court further delineated the rules by stating that "the most basic constitutional rule in this area is that `searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment  subject only to a few specifically established and well-delineated exceptions.' The exceptions are `jealously and carefully drawn', and there must be `a showing by those who seek exemption * * * that the exigencies of the situation made that course imperative'. `[T]he burden is on those seeking the exemption to show the need for it.'"
[1] It should also be noted that, under specified circumstances, subdivision 2 of section 423 of the Vehicle and Traffic Law mandates the seizure of vehicles with illegally changed serial numbers.
[2] As the Supreme Court recently noted, in 1971, 125 policemen were murdered, all but five by gunfire. And according to one study, 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. (See Adams v. Williams, 407 U. S. 143, 148, n. 3.)