**In re J.O.R., Appellant.**

No. 00–FS–528.

District of Columbia Court of Appeals.

Argued March 20, 2003.
Decided April 10, 2003.

Eugene Ohm and Jennifer C. Daskal, Public Defender Service, with whom James Klein, Timothy P. O'Toole, Andrea Roth, and Arthur Ago, Public Defender Service, were on the brief, for appellant.

Sidney R. Bixler, Assistant Corporation Counsel, with whom Arabella W. Teal, Interim Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Rosalyn Calbert Groce, Supervisory Corporation Counsel, were on the brief, for appellee.

Before STEADMAN and FARRELL, Associate Judges, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

This is an appeal from a juvenile adjudication based on a guilty plea with reservation to appeal the denial of the motion to suppress. The offense is possession with intent to distribute cocaine under D.C.Code § 33–541 (1993).[1] We affirm because the warrantless search of appellant is consistent with the Constitution of the United States.

### I.

J.O.R. (then sixteen years old) was playing basketball on a public court when he was observed by a uniformed police officer who knew him. After the young man left the court the officer, knowing of an outstanding neglect custody order from the Superior Court, Family Division directing his apprehension, attempted to execute the order. The officer testified that previous efforts to take J.O.R. into juvenile custody were unsuccessful. J.O.R. attempted to flee, but was restrained by the officer and backup officers. J.O.R. shed his coat as it was pulled in the effort to hold him. The officer fell to the ground with J.O.R. and as they struggled the officer "checked his pockets." Subsequently twenty-two ziploc bags, containing what turned out to be cocaine, were recovered.

Appellant contends that taking a neglected child into custody is significantly different from arresting an adult or child suspected of having committed a crime. By implication, he seems to agree if there was a suspected offense the search would be lawful. He also argues that safety concerns and fear of evidence destruction are absent as justification for the search. As secondary arguments, he asserts that the full scale search inside the pockets exceeded a permissible limited "pat down," and that a subsequent inventory or administrative search cannot justify the search and seizure of the twenty-two bags.

■ The government's position is that in initiating neglect custody the same reasons of safety that justify a search of a suspected criminal also apply. In any event, the government contends that the cocaine would have inevitably been seized during a later inventory search. We do not reach this latter issue as we find persuasive precedents justifying a full search notwithstanding that the apprehension was under a neglect custody order.

### II.

■ In *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 494, 38 L.Ed.2d 427 (1973), the Supreme Court held that

---

1. Recodified at D.C.Code § 48–904.01 (2001).

searches conducted during custodial arrests were permissible, not only because of the risk that evidence may be destroyed, but because of the danger to the police officers involved. *Id.* at 235, 94 S.Ct. 494 (search of defendant incident to his arrest for driving after revocation of his operator's permit was permissible due to the danger to police officers making custodial arrests). The danger to the officers flows from their prolonged exposure, which does not exist during a *Terry*-type stop, while taking the person into custody and transporting him, and not from the ground for the arrest.[2] The Supreme Court explained that it was unwilling to qualify the breadth of allowable searches on the assumption that people arrested for some offenses are less likely to possess dangerous weapons than are those arrested for other crimes; therefore, the authority to search a person taken into custody "does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found on the person of the suspect."[3] *Id.* at 235, 94 S.Ct. 494. In addition to the safety concerns as to the police, we observe that J.O.R.'s status—a neglected child—could lead to his temporary or prolonged custody with other children similarly situated. Their safety is also of paramount importance.

■ This court has also held that a search incident to arrest is not limited by the grounds for the arrest. *United States v. Simmons*, 302 A.2d 728, 731–32 (D.C. 1973). "To make the nature of the offense the key to whether a full search may be undertaken as part of a valid arrest … would unduly endanger the safety of the officer without conferring any benefit on the public at large." *Id.* at 733 (footnote omitted). *See also United States v. Dyson*, 277 A.2d 658, 659 (D.C.1971) (holding that transporting officer had right to protect himself by searching person arrested); *Taylor v. United States*, 259 A.2d 835, 838 (D.C.1969) ("The search of appellant prior to his entering the patrol wagon was a standard police procedure to check for weapons and was incident to a lawful arrest."). Therefore, despite J.O.R. being taken into custody under a neglect custody order, the search is valid under *Robinson* and *Simmons* simply because custodial seizures on any ground inherently pose a danger. *See also Washington v. Chrisman*, 455 U.S. 1, 7, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982) (citing *Robinson*) ("Every arrest must be presumed to present a risk of danger to the arresting officer. There is no way for an officer to predict reliably how a particular suspect will react to arrest or the degree of the potential danger.").

Finally, other jurisdictions have upheld searches of juveniles taken into custody in similar situations. The New Jersey Superior Court explained in *State in Interest of J.G.*, 227 N.J.Super. 324, 547 A.2d 336, 338–39 (Ch. Div.1988) that a juvenile involved in a family dispute would not be treated differently by the New Jersey juvenile system than a juvenile delinquent or adult because when a child is taken into

---

2. "The danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty, and not from the grounds for arrest." *Robinson*, 414 U.S. at 234 n. 5, 94 S.Ct. 494.

3. In the companion case to *Robinson*, *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), the Court further held that the fact that "the officer here was not required to take the petitioner into custody by police regulations … and there did not exist a departmental policy establishing the conditions under which a full-scale body search should be conducted," were not "determinative of the constitutional issue." *Id.* at 265, 94 S.Ct. 488.

custody it is a restraint of liberty and thus analogous to the arrest of an adult.[4] In *In re Humberto O.*, 80 Cal.App.4th 237, 95 Cal.Rptr.2d 248 (2000), the Court of Appeal of California upheld an officer's search of a truant before transporting him to school because custodial arrests are potentially dangerous.[5] The Louisiana Court of Appeals also held that a juvenile taken into custody for truancy, which was not a crime, was in custodial detention; therefore, the search of the juvenile was valid as incident to arrest. *See State in Interest of R.D.*, 749 So.2d 802 (La.Ct.App.1999). Finally, in *Brown v. Ashton*, 93 Md.App. 25, 611 A.2d 599, 612–13 (Spec.App.1992), *vacated on other grounds*, 339 Md. 70, 660 A.2d 447, 460 (1995), the Maryland Court of Special Appeals held that a search of a minor made incident to being taken into custody for a possible curfew violation was valid and constitutional.

Appellant argues that a juvenile taken into custody pursuant to a court order has not been arrested or detained for Fourth Amendment purposes, *see* D.C.Code §§ 16–2309, –2311(a)(4) (1981)[6], MPD General Order 305.1(I)(K)(4)(b)(5), and thus cannot be searched because the custody was not in contemplation of criminal custody. Nonetheless it is custody, albeit

in this case not grounded in criminal conduct, which makes a search permissible. With respect to appellant's reliance upon *Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), the search, which was held invalid, was not incident to arrest, for no arrest was contemplated by the officer when he issued the traffic citation. The Court there invalidated a state statute that in effect legitimized "a search incident to citation." *Knowles*, 525 U.S. at 115, 119 S.Ct. 484.[7]

Accordingly, the juvenile adjudication is *Affirmed.*

4. "While there may be some distinctions as to how or where a juvenile involved in a juvenile-family crisis may be detained, transported or committed as compared to a juvenile charged with delinquency, for our purposes in considering a search and seizure, there is no distinction. Being 'in custody' is a restraint of liberty. When a juvenile is taken into custody, whether it be short-termed or not, the juvenile is not free to leave. The taking into custody of a juvenile is analogous to the arrest of an adult.... When a juvenile is taken into custody, *Chimel*, reasoning applies and a search incident to detention is proper." *State in Interest of J.G., supra*, 547 A.2d at 339.

5. "The potential dangers lurking in all custodial arrests make warrantless searches of

items within the 'immediate control' area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved." *In re Humberto O., supra*, 95 Cal.Rptr.2d at 252 (citations omitted). *See also In re Ian C.*, 87 Cal.App.4th 856, 104 Cal.Rptr.2d 854, 856 (2001) (holding searches proper in cases of truancy).

6. D.C.Code §§ 16–2309, –2311(a)(4) (2001).

7. Contrary to appellant's argument, we do not read *Knowles* as limiting the general classes of permissible custodial searches to those where both danger to officers and destruction of evidence are potential risks.